Lionel J. BASTIEN, Plaintiff-Appellant,

v.

Joseph P. CALIFANO, Secretary of Health, Education and Welfare, Defendant-Appellee.

No. 339, Docket 77–6120.

United States Court of Appeals, Second Circuit.

Argued Dec. 15, 1977.

Decided March 1, 1978.

---

**4.** See 7 U.S.C. § 136 et seq.

Eugene Welch, Asst. U. S. Atty., Rochester, N. Y. (Richard J. Arcara, U. S. Atty., W.D.N.Y., Buffalo, N. Y., and Jerome T. Levy, Acting Regional Atty., Region II, and Julia T. Reed, Asst. Regional Atty., Dept. of H. E. W., of counsel), for defendant-appellee.

Ian C. DeWaal, Rochester, N. Y. (Monroe County Legal Assistance Corp., Rochester, N. Y.), for plaintiff-appellant.

Before OAKES and VAN GRAAFEILAND, Circuit Judges, and BARTELS, District Judge.*

BARTELS, District Judge:

This is an appeal from an order of the United States District Court for the Western District of New York granting summary judgment to the Secretary of H.E.W. in an action by Lionel Bastien to review the Secretary's denial of disability benefits.

Reversed and remanded.

I

Appellant Bastien, who applied for disability benefits on January 21, 1974, has an extensive medical record. He claims that he became disabled in June, 1973, from degenerative spinal arthritis. He is presently fifty-seven years old, five feet seven and one-half inches tall, weighs 185 pounds and has had eight years of education. He worked as a cook in the Army for nine years, following which, from 1951 to 1973, he worked as an assembly-line packer, boxcar loader, checker[1] and fork lift operator

---

* Of the Eastern District of New York, sitting by designation.

1. According to Bastien, checking consisted of assembling a shipment on an electric pilot,

for the R. T. French Co. He has also worked as a janitor and laborer. Bastien lost his job with the R. T. French Co. when the company shifted operations to Missouri. He was then able to work for four days at VWR after a company doctor recommended him for light work, but was compelled to quit because the job called for constant bending. Economic distress, however, forced him to resume light work at VWR as a packer, but he testified that several weeks later, in mid-January, 1974, he was notified that his employment was terminated because his employer did not want to "take a chance" with him. Bastien subsequently applied for a job at the Xerox Corporation, but was told four months later to appear at work only to be rejected at that time by a company doctor.

For our purposes Bastien's medical record commences with an injury to his right shoulder, arm and upper back on May 21, 1968. He visited a number of doctors in connection with that injury and the general consensus of the medical reports was that he was still employable and able. One of the examining doctors, in a report dated June 17, 1968, noted that X-rays of the cervical spine showed some evidence of degenerative arthritis. Bastien later underwent treatment for carpal tunnel syndrome (which results from pressure on the median nerve as it passes through the wrist), undergoing surgery on October 20, 1970. The medical records indicate that at most Bastien suffered a minor disability to the right wrist and hand from this condition. Finally, on February 23, 1973, Bastien strained his back pulling a cabinet off a wall at work, and again saw a number of doctors in relation thereto. His treating physician was Dr. R. Sewall Miller who, on March 7, 1973, found evidence in X-rays of degenerative changes in Bastien's thoracic spine. Dr. Miller saw Bastien a number of times in the following months and found him to be improving, although his back problem appeared in May, 1973, to be merging with extensive osteo-arthritis which would never completely disappear. In August, 1973, Dr.

Miller was of the opinion that Bastien could resume all of his normal activities and indicated that he would see Bastien in the future only if necessary.

Bastien did not return to Dr. Miller until January 14, 1974, about the time he lost his job at VWR. At this time Dr. Miller found Bastien had severe degenerative arthritis in the thoracic levels of the spine and that Bastien, who was experiencing difficulty finding a job, had no job possibilities. Two months later, Dr. Egel, to whom Bastien had been referred by his ex-employer's compensation carrier, similarly concluded that Bastien had degenerative changes of the cervical and lower thoracic spine which predated and were aggravated by the February, 1973 accident. However, Dr. Egel, who relied in part on X-rays taken a year before, felt that Dr. Miller had been correct in his earlier prognosis of August, 1973, that Bastien had gone on to recovery from the injury. According to Dr. Egel, while Bastien's job choices would be limited, he was certainly not totally disabled. Dr. Egel's more optimistic opinion as to Bastien's condition was corroborated by the January and April, 1974 reports by workmen's compensation doctors Porta and Maggio.

Dr. Miller undertook to explain the apparent inconsistency between Dr. Egel's opinion and his own in a May, 1974 report which stated that Bastien was not totally disabled because of the 1973 accident, but had suffered a partial disability secondary to the accident, which had aggravated his arthritic condition. Bastien's disability was more precisely rated at 50% in a July, 1974 report by Dr. Miller, holding the accident itself responsible for only half of the disability.

In October, 1974, Bastien was examined by Doctors Goldstein and Parker on behalf of the New York State Department of Social Services. Dr. Goldstein reported some evidence of spinal arthritis, but stated that he was unable to clearly document the presence of weakness or determine whether Bastien was "giving way" during the test of muscular strength. Dr. Parker reported

checking the order sheet to make sure the shipment was properly made up, and pulling the pilot for a distance of five hundred to one

thousand feet over to a truck where the truck driver would unload it.

that X-rays revealed discogenic (relating to the intervertebral discs) disease of the cervical spine, mild dorsal spine degenerative change, and decreased height in two lumbar discs along with mild osteophyte formation. The following month Dr. Miller reported severe progressive degenerative arthritis and decreased movement in the cervical, lumbar and lumbosacral spine, and on February 20, 1975, reported that Bastien remained permanently disabled. In the most recent medical report before the court, dated September 23, 1975, Dr. Miller stated, somewhat equivocally, that Bastien was "now almost totally disabled" and was "totally disabled."

## II

 Bastien filed his application for disability benefits in January, 1974, when he was discharged by VWR, claiming disability benefits as of June 29, 1973, when he was laid off by the R. T. French Co. Upon denial of the application Bastien was granted a hearing which was held on February 5, 1975, at which only he testified, asserting that he suffered from pain day in and day out unrelieved by medication and which was spreading to his thighs and knees. He also stated that he had a good work record and that before he was considered disabled he would go out every day with his wife to look for a job. He testified that at the time of the hearing he could not even cut his 110 foot hedge because he would lose strength in his hands and his arms would tighten up; that while he could push an electric lawn mower he could not rake or bag the grass; that he suffered from limited neck motion and could not stoop over, having to go to the ground on one knee; and that the farthest he could drive was about 38 miles because his back got tired. Prior to rendering his decision the Administrative Law Judge ("ALJ") also had before him all of the medical reports discussed above except the September 23, 1975, report of Dr. Miller which was, however, before the Appeals Council when it affirmed the ALJ's eventual denial of disability benefits.[2]

The ALJ's essential finding was that while Bastien could not do work involving heavy labor, regular bending, heavy lifting, constant stooping or extensive standing or walking, he was able to function otherwise in a normal manner both mentally and physically, and could do jobs of a light and sedentary nature such as that of a checker. The ALJ stated that he was not bound by Dr. Miller's conclusory allegations of disability, and discredited to an extent Dr. Miller's opinions because the change in his diagnosis appeared to be influenced by Bastien's inability to find work. For "hard medical evidence" that Bastien's back problem in and after 1973 was not disabling, the ALJ relied on an April, 1973 report by a workmen's compensation doctor that Bastien had a mild residual partial disability, on Dr. Maggio's and Dr. Egel's reports in early 1974 that Bastien suffered from no disability due to the accident of February, 1973, and on Dr. Goldstein's October, 1974 report to the effect that there was some evidence of spinal arthritis, but that the presence of weakness and pain could not be documented.

## III

Under 42 U.S.C. § 423(d)(1)(A) a claimant, in order to qualify for disability benefits, must show his

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

Under (d)(2)(A) of the same section a claimant is not disabled unless

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or

---

**2.** The Appeals Council considered the additional evidence, but let the decision of the ALJ stand as the final decision of the Secretary.

whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

An application for disability benefits remains in effect until final decision by the Secretary and a claimant will prevail if he can show that he became disabled at any time up to the date of decision. 42 U.S.C. § 423(b); *Frye v. Celebrezze,* 365 F.2d 865 (4th Cir. 1966); *Carter v. Celebrezze,* 367 F.2d 382 (4th Cir. 1966).

It is the function of this court not to make a *de novo* determination but to decide whether the Secretary's finding is supported by substantial evidence. 42 U.S.C. § 405(g); *Gold v. Sec'y of H. E. W.,* 463 F.2d 38 (2d Cir. 1972). Substantial evidence means more than a mere scintilla, and is defined as such relevant evidence as a reasonable man might accept as adequate to support a conclusion. *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). In assessing disability, factors to be considered are (1) the objective medical facts; (2) diagnoses or medical opinions based on such facts; (3) subjective evidence of pain or disability testified to by the claimant or others; and (4) the claimant's educational background, age, and work experience. *Gold v. Sec'y of H. E. W., supra.* In such considerations eligibility for benefits is to be determined in light of the fact that "the Social Security Act is a remedial statute, to be broadly construed and liberally applied." *Id.* at 41, quoting from *Haberman v. Finch,* 418 F.2d 664, 667 (2d Cir. 1969).

While we do not agree with the Secretary's ultimate conclusion, we find that there is substantial evidence in the record to support a finding that Bastien was not disabled on June 23, 1973, the time Bastien claims he was first disabled, and that there is also substantial evidence that the plaintiff was not disabled in mid-January, 1974, when he was discharged from his position as packer at VWR.[3] This evidence is provided by the opinions of Drs. Porta, Maggio and Egel of January through April, 1974 that Bastien was only partially disabled.

However, throughout 1974 and 1975 Bastien's treating physician, Dr. Miller, maintained that Bastien suffered from severe degenerative progressive arthritis which caused disability. The expert opinions of a treating physician as to the existence of a disability are binding on the factfinder unless contradicted by substantial evidence to the contrary. *Gold v. Sec'y of H. E. W., supra; Branham v. Gardner,* 383 F.2d 614 (6th Cir. 1967). *See also Wyatt v. Weinberger,* 519 F.2d 1285 (4th Cir. 1975). *But cf. Miranda v. Sec'y of H. E. W.,* 514 F.2d 996 (1st Cir. 1975). After April, 1974, the only evidence relied upon by the ALJ to contradict Dr. Miller is Dr. Goldstein's report which, while equivocal in some aspects, serves more to confirm Dr. Miller's opinion of disability due to spinal arthritis than to contradict it. There is nothing in the record to contradict Dr. Miller's February and September, 1975 letters. Nor is there anything in the record to indicate the rate of degeneration which would permit an inference that Bastien was able to engage in substantial gainful employment in 1975 based on examinations performed in 1973 and 1974.

The degenerative nature of Bastien's condition is an important factor to be weighed. The absence of contemporaneous medical reports contradicting those of the treating physician at the time he found complete disability in 1975 presents in this case a serious deficiency in the record. This deficiency is more serious in view of the vocational evidence submitted by Bastien relating to his discharge by one employer as a bad insurance risk and the subsequent refusal by a doctor for the Xerox Corporation to certify him as fit for work. Such evidence strongly supports the conclusion of appellant's physician that appellant was in fact totally disabled by degenerative arthritis. Moreover, we believe it is insufficient for the Secretary to assert that Bastien might do jobs of a light and sedentary nature such as checker without providing a job description clarifying the nature of the

---

3. The hiring practices of an individual employer do not determine the issue of disability under the Social Security Act. *Lopez Lopez v. Sec'y of H. E. W.,* 512 F.2d 1155 (1st Cir. 1975).

job, demonstrating that the job does not require significant stooping and walking. *See Oppenheim v. Finch,* 495 F.2d 396 (4th Cir. 1974).

We therefore believe that the purposes of the Social Security Act will best be served by reversing and remanding the case to the Secretary to explicitly weigh and consider Dr. Miller's September, 1975 letter, the rate of degeneration of Bastien's arthritis, Bastien's present condition, and other relevant information. *Cutler v. Weinberger,* 516 F.2d 1282 (2d Cir. 1975). Because the Secretary accorded too much weight to the outdated medical reports to contradict the treating physician's reports of 1975, we believe reversal alone is not appropriate, but should be accompanied by a remand to afford the Secretary the opportunity to adduce additional evidence, if available, to counter Bastien's showing of disability. *Compare Wyatt v. Weinberger, supra, with Taylor v. Weinberger,* 512 F.2d 664 (4th Cir. 1975), and *Gold v. Sec'y of H. E. W., supra.*

The decision of the district court is reversed with instructions to remand to the Secretary of H.E.W. for further proceedings not inconsistent with this opinion.