**Ruth P. McCARTHY, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

**No. 81 Civ. 0391.**

United States District Court, S. D. New York.

Jan. 7, 1982.

Isaac Mc Natt, New York City, for plaintiff.

John S. Martin, U. S. Atty., S. D. New York, New York City by Susan Campbell, Asst. U. S. Atty., New York City, for defendant.

### MEMORANDUM AND ORDER

WHITMAN KNAPP, District Judge.

Plaintiff and defendant cross-move for judgment on the pleadings in this action brought pursuant to section 205(g) of the Social Security Act, as amended (the Act), 42 U.S.C. § 405(g), to review a final determination of the Secretary of the United States Department of Health and Human Services (the Secretary), denying plaintiff's application for a period of disability and disability insurance benefits. We treat these motions as motions for summary judgment pursuant to Fed.R.Civ.P. 56 because matter outside the pleadings, specifically the transcript of the record relating to plaintiff's application under the Act (Tr.), has been presented. For the reasons below, we grant defendant's motion and deny plaintiff's, thus affirming the Secretary's determination as supported by substantial evidence. *See Richardson v. Perales* (1971) 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842.

## Background

Plaintiff filed an application for disability insurance benefits on June 9, 1978 (Tr. 95–98), and it was denied initially on July 1, 1978 (Tr. 99–101) and on reconsideration on March 29, 1980 (Tr. 110–12). Plaintiff then requested a hearing on June 3, 1980 (Tr. 113) to review the application, which hearing was held on September 12, 1980 (Tr. 25–94). After a *de novo* consideration, the Administrative Law Judge (ALJ) found the plaintiff not to be under a disability in a decision filed on September 23, 1980 (Tr. 12–17). This decision became the Secretary's final determination when it was approved by the Appeals Council on November 17, 1980 (Tr. 4–6).

Plaintiff is now close to 64 years old, a registered nurse with a college education (Tr. 44, 47), and she alleges disability since 1971 as a result of a heart condition (Tr. 95). Her earnings record show her to have met the Act's special insured status requirements through March 31, 1971, but not thereafter (Tr. 114). This means that plaintiff had to establish that she was disabled on or before March 31, 1971 in order to be eligible for benefits. *Rodriguez v. Califano* (S.D.N.Y.1977) 431 F.Supp. 421, 422. Plaintiff has not disputed that March 31, 1971 is the critical date on or before which her disability must be established (Tr. 41).

At the hearing before the ALJ, testimony was received from plaintiff—represented by counsel—and from Dr. Charles Bailey, her treating physician. Dr. Bailey, a board certified thoracic and cardiovascular surgeon, testified that he had operated on plaintiff in 1952, but that he had not seen her again until 1978, except for a check-up visit in 1953 (Tr. 63–65). He testified further that he had been treating plaintiff since 1978 for angina pectoris on a fairly regular basis and that she has been fully disabled since 1978 (Tr. 65–67). Although he had no direct knowledge about plaintiff's condition in 1971, he testified that in his opinion plaintiff must have also been disabled at that time (Tr. 68, 71–74, 80, 83, 85). Dr. Bailey also submitted various reports which amplified and reiterated his testimony. First, a report of February 8, 1980 indicated that he had operated on plaintiff in 1952, and briefly described her current treatment and some test results (Tr. 162). A more extended report of September 15, 1980 described the 1952 operation and indicated that the patient did well post-operatively. In this report Dr. Bailey also described the results of a June 1978 examination, stating that in his view the patient was totally disabled in 1978 and must have also been so in early 1971 (Tr. 167–73). A third report of September 17, 1980 reiterated Dr. Bailey's previous findings (Tr. 174–76). Dr. Bailey's opinion that plaintiff was disabled in 1971 was supported neither by clinical or diagnostic tests nor by direct knowledge. In his letter of September 17, 1980 (Tr. 175) he indicated, however, that his view was consistent with the contents of an undated letter by Dr. Nathan of the Albany Medical Center addressed to plaintiff's last employer (Tr. 166) which stated that the writer had had "occasion to speak to [the plaintiff]" and "because of severe family stresses" it would be prudent for her to end the responsibility of her current job.[1] No medical evidence was submitted directly pertaining to the condition of plaintiff's heart in 1971.

Plaintiff testified that she had worked sporadically after the 1952 surgery (Tr. 25, 115), and that she last worked as a resident nurse in 1971 at a center for adults (Tr. 47, 55), but had to stop due to cardiac symptoms. However, she testified further that she had not been hospitalized for cardiac problems since 1964 (Tr. 47–49, 54). She confirmed that she had not sought treatment from Dr. Bailey for any heart-related problems between 1953, when she saw him for a check-up visit, and 1978 (Tr. 57–58). Reports from Columbus Hospital covering September and October of 1971 were re-

---

1. The stresses mentioned in Dr. Nathan's letter may have been partly due to her 1971 divorce (Tr. 16, 46) and to the automobile accident she suffered that very same year (Tr. 177–84). Although the letter is undated it must have been written no later than 1971 since it is addressed to plaintiff's last employer. She testified to having left such employer in 1971 (Tr. 49, 55).

ceived by the Appeals Council and made part of the record. They show that plaintiff was treated for cuts and bruises sustained in an automobile accident (Tr. 177–84), but—as stated above—they provide no specific information as to her heart condition in 1971.

## Discussion

Plaintiff makes only one contention before us. Namely, that under the law in this Circuit, the ALJ should have considered himself to be bound by Dr. Bailey's testimony that plaintiff was disabled in 1971. *See,* for instance, *Bastien v. Califano,* (2d Cir. 1978) 572 F.2d 908. Instead, the ALJ while far from dismissing Dr. Bailey's testimony, evaluated the pertinent evidence in these terms:

> Certainly, the undersigned does not dispute the fact that the claimant is totally disabled at *this time* and was so disabled at the time of her hearing. This is the conclusion of Dr. Bailey and there is no reason to doubt his evaluation made after an extensive examination of the claimant. However, it seems impossible to determine the degree of the claimant's disability *back in 1971* when her insured status expired.... Allowing that the impairment which Dr. Bailey classified as angina pectoris commenced in 1959 it is almost impossible to evaluate the degree of the claimant's impairment *in 1971 when her insured status expired...* Dr. Bailey feels that with a reasonable medical certainty that the claimant was totally disabled in 1971 but he, himself, can not give us any clinical findings to support this opinion since he did not see the claimant between approximately 1953 and 1978. It is also be noted [sic] that the *claimant did not seek medical attention* for this heart impairment *at the time of the alleged onset of disability.* Tr. 16 (Emphasis added.)

In support of her position plaintiff refers us primarily to *Hankerson v. Secretary of HHS* (2d Cir. 1980) 636 F.2d 893, a case that does not stand for the rule which she advocates. After a review of *Hankerson* and of the applicable law in this Circuit, we are persuaded that the rule that the opinion of the claimant's treating physician is binding on the Secretary in the absence of substantial contradictory evidence (hereinafter the *Bastien* Rule), has no application in the circumstances of this case.

*Hankerson* involved an appeal of the District Court's affirmance of the Secretary's decision that plaintiff was not entitled to Supplemental Security Income (SSI) benefits. The Court of Appeals vacated the judgment on grounds that, in the absence of counsel, the ALJ did not sufficiently explore the facts of the case. Only in connection with one of the ALJ's many errors—failing to advise plaintiff that he should obtain a more detailed statement from his treating physician—did the Court cite the *Bastien* Rule. 636 F.2d at 896. It noted that "[w]hile none of these errors standing alone might be sufficient to set aside the Secretary's determination, their combination persuades us that plaintiff did not have a fair and adequate hearing before the Secretary." 636 F.2d at 897. The facts and the reasoning in *Hankerson* show that it does no more than regulate the ALJ's conduct at a pro se hearing.[2] See also *Eiden v. Secretary of HEW* (2d Cir. 1980) 616 F.2d 63, 65.

Other cases which illustrate what we have called the *Bastien* rule are no more helpful to plaintiff. In the *Bastien* case itself, the issue was whether a claimant—who suffered from degenerative arthritis—was disabled in 1975. 572 F.2d at 912. Medical reports from 1973 and 1974 suggested that the claimant was not disabled whereas a 1975 report of the claimant's treating physician indicated that he was indeed disabled. The ALJ chose to accept

**2.** It is of no consequence to our conclusion that *Hankerson* is inapposite that there the action was brought for SSI whereas here the claim is for disability benefits. Cases brought for either are cited interchangeably since the standard for judicial review is identical. *See Hankerson v. Secretary of HHS* (2d Cir. 1980) 636 F.2d 893, 895 n.2; *Rivera v. Harris* (2d Cir. 1980) 623 F.2d 212, 216 n.4.

the 1973 and 1974 reports rather than the 1975 opinion of the plaintiff's treating physician. The Court of Appeals disagreed and noted

... [W]e find that there is substantial evidence in the record to support a finding that Bastien was not disabled ... in 1973 ... and ... not disabled in 1974... However, throughout 1974 and 1975 Bastien's treating physician, Dr. Miller, maintained that Bastien suffered from severe degenerative progressive arthritis which caused disability. The expert opinions of a treating physician as to the existence of a disability are binding on the fact-finder unless contradicted by substantial evidence to the contrary.... There is nothing in the record to contradict Dr. Miller's ... 1975 letters. Nor is there anything in the record to indicate the rate of degeneration which would permit an inference that Bastien was able to engage in substantial gainful employment *in 1975 based on examinations performed in 1973 and 1974....*

The absence of *contemporaneous* medical reports contradicting those of the treating physician at the time he found complete disability *in 1975* presents in this case a serious deficiency in the record. 572 F.2d at 912 (Emphasis added.)

*Bastien* stands, thus, for the proposition that, where the issue is the claimant's disability at a particular time, a *contemporaneous* opinion or report of a treating physician must be given credence over reports prepared prior to the time disability is to be established. The case does not stand, however, for the rule plaintiff urges upon us here. Namely, that the Secretary should be bound by the opinion of a doctor as to what must have happened seven years before he became the claimant's treating physician.[3]

Other cases illustrating the *Bastien* rule are consistent with this view. *See Alvarado v. Califano* (2d Cir. 1980) 605 F.2d 34; *McLaughlin v. Secretary of HEW* (2d Cir. 1980) 612 F.2d 701; *Eiden v. Secretary of HEW* (2d Cir. 1980) 616 F.2d 63; *Aubeuf v. Schweiker* (2d Cir. 1981) 649 F.2d 107.

In sum, plaintiff urges us to rule that the Secretary must be bound by the 1978 speculations of a doctor as to what must have happened in 1971 to a registered nurse who went to no physician until seven years after the alleged onset of disability, making it impossible for reliable contemporaneous evidence to be produced. This position is untenable.

Defendant's motion is granted; plaintiff's motion is denied.

SO ORDERED.

---

**3.** Because we hold that, in the circumstances of this case, the *Bastien* rule is inapplicable, we need. not consider what effect, if any, the lack of clinical or laboratory findings may have on Dr. Bailey's testimony. To be sure, this Circuit has held that a medical opinion does not necessarily have to be supported by "objective" clinical or laboratory findings. *Cutler v. Weinberger* (2d Cir. 1975) 516 F.2d 1282, 1286–87; *McLaughlin v. Secretary of HEW* (2d Cir. 1980)

612 F.2d 701, 704. But, so far as we know, the Court of Appeals has twice refused to decide whether the *Bastien* rule should apply when the contemporaneous opinion of the treating physician is unsupported by "objective" tests. *Alvarado v. Califano* (2d Cir. 1980) 605 F.2d 34, 35; *Hankerson v. Secretary of HHS* (2d Cir. 1980) 636 F.2d 893, 896 n.3. We follow the same prudent course.