Margarita SANTIAGO, Plaintiff,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES, Defendant.

No. 81 Civ. 6925.

United States District Court,
S. D. New York.

June 2, 1982.

Margarita Santiago, pro se.

John S. Martin, Jr., U. S. Atty. by Nancy E. Friedman, Asst. U. S. Atty., New York City, for defendant.

MEMORANDUM OPINION AND ORDER

LOWE, District Judge.

Plaintiff, *pro se*, appeals from a determination of the Appeals Council of the Social Security Administration denying review of the administrative "hearing decision" in which her application for a Period of Disability and Disability Benefits was rejected.[1] For the reasons discussed below, the decision of the Secretary of the Department of Health and Human Services is reversed.[2]

FACTS

Plaintiff was born July 7, 1943 in the Dominican Republic, T.26, where she was educated through the seventh grade, T.28.

---

1. The appeal is taken pursuant to 42 U.S.C. § 405(g): "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary . . . ."

2. Because the Appeals Council "concluded that there is no basis under the above regulations for granting the request for review" of the Administrative Law Judge's decision, that decision stands as the final decision of the Secre-

She moved to the United States in 1970,[3] and now resides with her three children and husband. T.27–28. Plaintiff worked from her arrival in this country up until July 1977 as a sewing machine operator. She claims that she stopped work because of a physical impairment which became disabling in December 1977.

On October 19, 1979, plaintiff applied for disability benefits, claiming "flebitis in leg." T.46.[4] Her application was denied on December 17, 1979 on the ground that her impairment was not severe. T.50. Mrs. Santiago then filed a request for reconsideration on February 27, 1980, stating: "I am unable to work and my doctor, Dr. Natalia Schwartz, says I'm not able to work." T.51. In a Disability Determination dated March 13, 1980, the agency again denied plaintiff's application. It found that plaintiff's prior job was sedentary in nature, and "therefore this younger individual worker . . . can go back to her customary work." T.53.

Plaintiff then requested an administrative hearing, which was held on November 17, 1980. T.23. The Administrative Law Judge, by decision dated April 20, 1981, again denied her application for disability benefits. T.8. This decision was affirmed by the Appeals Council on August 26, 1981. T.3. The present appeal followed.

### ADMINISTRATIVE DECISION

After the hearing of November 17, 1980, the Administrative Law Judge ("ALJ") filed a decision on April 20, 1981. He found:

From at least 1970 through July 1977 (subsequent to the birth of [her] youngest child) Ms. Santiago also stated to the consultative physician that she worked until she was laid off (Exhibit 18). However, the claimant now alleges that six months subsequent to the termination of employment, she became so impaired that

tary. Transcript of Record of Proceedings at 3 (hereinafter cited as "T.__").

3. According to the record, Mrs. Santiago cannot speak or read English.

she could no longer work. Of note, claimant was divorced in 1977, which may have influenced claimant's change of life style (Exhibit 1).

T.9. He further wrote:

I reject Ms. Santiago's claim of severe pain based on her demeanor and credibility at the hearing. Further, Doctor Schaye and Doctor Schwartz's residual functional capacity [sic] are rejected as exaggerated. Doctor Outes [sic] (consultative examination Exhibit 18) report and assessment is more detailed and is supported by reasoning and evaluation, elements totally missing from the reports of Doctor Schaye and Doctor Schwartz. Further, although supposedly in bed almost all day, no one [sic] was called by the claimant to support this extreme limited activity, although ably represented by experienced counsel.

T.9. And:

The claimant's appearance at the hearing did not demonstrate a person in severe constant pain. On the contrary, the flavor and content of her testimony and demeanor was less than convincing and unsupported.

He further determined that the evaluations by Dr. Schaye and Dr. Schwartz were contradictory and not credible. In conclusion he found:

On the basis of all the evidence and testimony, I find that the residual physical capacity evaluation of Doctor Manuel Outes persuasively reflects the claimant's functional abilities. This evaluation demonstrates that the claimant is capable of gainful activity (Exhibit 18) and I so find. Pursuant thereto, claimant is found to be "not disabled."

T.10.

### DISCUSSION

Section 423(d)(1)(A) of Title 42 defines "disability" as:

4. In her disability report accompanying the application, plaintiff stated that she could not sit or stand "too long" because of her leg. T.56. She further stated that she could not do any cleaning or shopping and could not go out visiting. T.59.

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

Subdivision (2)(A) requires, for the purposes of subdivision (1)(A), that an individual be unable to perform his previous work and be unable,

considering his age, education, and work experience, [to] engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether he would be hired if he applied for work . . . .

See generally Campbell v. Secretary of the Department of Health and Human Services, 665 F.2d 48, 51 (2d Cir. 1981).

Any applicant for disability benefits under the Social Security Act, 42 U.S.C. §§ 401–31, 1381–83c, bears the initial burden of "showing that his impairment prevents him from returning to his prior type of employment." Berry v. Schweiker, 675 F.2d 464, 467, (2d Cir. 1982). Accord Campbell v. Secretary of the Department of Health and Human Services, 665 F.2d at 51; Aubeuf v. Schweiker, 649 F.2d 107, 111 (2d Cir. 1981). In addition, a determination by the Secretary may be set aside only if it is based on legal error or is not supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3). See Berry v. Schweiker, 675 F.2d at 467; Aubeuf v. Schweiker, 649 F.2d at 112.

Upon reviewing the hearing record and attached exhibits in the present case, the Court concludes that the decision of the ALJ was based upon an erroneous application of law, and therefore must be reversed. The Second Circuit Court of Appeals, in a number of recent decisions, has endorsed the rule that, where disabling pain is the claimed impairment,

"[t]he expert opinions of a treating physician as to existence of a disability are binding on the fact finder unless contradicted by substantial evidence to the contrary."

Aubeuf v. Schweiker, 649 F.2d 107, 112 (2d Cir. 1981), quoting McLaughlin v. Secretary of H. E. W., 612 F.2d 701, 705 (2d Cir. 1980). See also Alvarado v. Califano, 605 F.2d 34, 35 (2d Cir. 1979); Tanner v. Secretary of Health and Human Services, 80 Civ. 2443 (Lowe, J.), Mem. Op. at 11 (S.D.N.Y. March 13, 1981). In the opinion of the Court, the ALJ did not adhere to that rule with respect to findings and opinions of treating physicians in the present case. See Bastien v. Califano, 572 F.2d 908, 912 (2d Cir. 1978).

During the hearing, plaintiff testified that she was instructed by her doctor not to continue to work because of the condition of her leg. T.29. In response to the interrogation by the ALJ, plaintiff explained that, even when seated with her leg supported horizontally, she was in pain. T.31, 40. She also produced three medications currently prescribed by her physician: one to relieve pain; one to reduce swelling; and one to replace lost potassium. T.31–32. She further testified under oath that she does not take part in any of the daily household chores, such as cooking, shopping, cleaning, washing dishes, etc. Most of the time, she lies prone, reading Spanish newspapers or watching television (in Spanish and English). T.33.

The medical evidence introduced by plaintiff supports her claim of disability due to severe impairment of her leg.[5] First, the ALJ made the following observation of plaintiff's leg during the hearing:

Let the record reflect that there seems to be a marked swelling of the lower portion of her foot, from the ankle radiating downward towards the toes to the extent that the ankle definition is completely merged with the swelling and the swelling continues upward towards the ankle—towards the knee portion of the claimant's leg and in addition to the

---

**5.** Plaintiff testified that she sees a doctor 3–4 times per month. Although the office is locat-ed four blocks from her home, she takes a taxi whenever she has the money. T.35–36.

swelling, there seems to be a marked shininess—almost indicating a taughtness [sic] of the skin while the right leg, which is also being displayed, shows a clear definition of the calf muscle. The left leg because of the swelling completely depletes any definition as a result of the swelling of any calf muscle on that leg— There also appears to be a difference in color of the left leg as compared to the right leg.

T.36. And:

In other words, the definition of her kneecap on the left leg is also depleted as compared to the definition of her kneecap on the right leg as a result of swelling and there appears to be a marked swelling of the left kneecap when compared to the right knee . . . .

Second, plaintiff produced the reports of her treating physicians, Dr. Schvartz[6] and Dr. Schaye. Exhibit 12 at the hearing consisted of a report by Dr. Schvartz, dated February 26, 1980, in which he certified that plaintiff was under his care because of her leg condition, and that she is unable to work. T.a1. In a subsequent report, dated March 5, 1980, he wrote:

The diagnosis is chronic filariastis of the left leg . . . . This is a chronic, incurable parasitic infection in the lymphatic leg. This is a result of her environment. She contacted [sic] this when she was a young girl, about 15 years old. The symptoms are swelling of the left leg, which she will have all her life. There is no known effective treatment besides having intermittent diuretics and a low sodium diet. . . . She cannot stand more than 10 to 15 minutes without sitting down. She cannot sit all day because the longer she sits the greater the edema.

T.84. Finally, Dr. Schvartz stated in a letter of September 24, 1980, that he feels the plaintiff is "totally disabled and unfit for gainful employment . . . ." T.86.

The other treating physician reported a similar history for the plaintiff, as well as the diagnosis of chronic lymphedema. As to her status, he wrote: "The patient is totally and permanently disabled for gainful occupation. She cannot sit or stand for any reasonable periods of time because the swelling and pain of the left lower extremity would become aggravated." T.88. *See also* the residual functional capacity charts prepared by Dr. Schvartz and Schaye, T.87 and 89, respectively, indicating severe limitation on all of plaintiff's activities. Both doctors indicated that plaintiff could not walk, stand or sit more than one hour in an 8-hour day.

The ALJ was not satisfied with this record because of "certain" unspecified findings not consistent with his personal observations. T.43. As a result, he directed that a consultative evaluation be conducted by an internist. T.44. This was performed by Dr. Outes. His report, T.92–94, transcribed on February 10, 1981, included the following:

1. moderate swelling of the left foot and lower leg;

2. no pulse felt in the lower left extremity;

3. "history of swelling of the left lower extremity since about age twelve; this is probably due to filariasis, a parasitic infection that affects the lymphatic channels. The swelling usually does not improve and may become worse regardless of rest. At present, the swelling is relatively mild as evidenced by the measurements . . . ." T.93.

His comments, written after the examination, included:

I disagree . . . with previous medical reports stating that this patient is totally and permanently disabled and that she cannot sit or walk. First of all, the patient was working for seven years with the same condition and was able to take care of her family, without any obvious complication or deterioration. Secondly, the condition may get worse regardless of bedrest. Thirdly, to state that patient

---

**6.** Dr. Schvartz, the principal treating physician, specializes in internal medicine and cardiovas- cular disease. T.85.

cannot walk or even sit is also erroneous in my opinion. Should this patient be asked to have complete bedrest for the remainder of her life? I do not think so. An elastic leg support will probably do as much as bedrest, together with elevation of the leg in the evening and night.

T.93.

Any doubtful gain in the decreased swelling of the leg achieved by total bedrest cannot compensate for the long-term problems of total immobilization.

T.94. And:

It is also quite difficult to state what is at this time the functional capacity of this patient. She has been told, and she believes, that she cannot do anything and she behaves accordingly. She probably cannot carry heavy loads or stand all day, but otherwise, I see no reason for any other limitation. With encouragement and proper management, this patient can lead a normal life. Her condition at this time is not different than it was during the time she was working full-time.

T.94.

The record evidence discloses two general factors influencing the ALJ's rejection of the conclusions of plaintiff's treating physicians: 1) the ALJ's conclusion that plaintiff's demeanor and testimony were unconvincing; and 2) Dr. Outes' report. These factors will be discussed below.

1. *Credibility*

The Court finds that there is not substantial evidence in the record to support the written decision of the ALJ. For example, the ALJ discredited plaintiff because, six months after she was laid off from work, she claimed total disability. However, there is nothing in the record to indicate the reason for plaintiff having been laid off, and the issue was not explored during the hearing.[7] Quite possibly plaintiff could have been discharged because she was often

ill or absent from work. Thus, the timing of her alleged impairment in relation to her discharge as a sewing machine operator does not constitute substantial evidence that her treating physicians' findings of disability were erroneous.

The ALJ also attached psychological significance to the fact that plaintiff was divorced in 1977. However, the record does not disclose how long before or after her work lay-off or claimed disability the divorce took place. In addition, plaintiff testified at the hearing that her husband presently lives with her. T.40. Apparently, therefore, plaintiff was remarried at some time. How soon after her divorce, or after she ceased working, was not brought out by the ALJ during the hearing, or even mentioned at that time by plaintiff or her attorney.

Third, the ALJ's skepticism concerning plaintiff's claim prompted him to write:

Additionally, taking into consideration, the age of Ms. Santiago's second youngest child, who is now approaching age seventeen, it is not reasonable to consider this young lady was running the household for her mother for the last four years and caring for an infant child, while she should have been attending school. No explanation was offered by the claimant for this disturbing circumstance.

T.9. Again, this concern, which appears in the written decision of the ALJ was never explored during the hearing. Thus, there is nothing in the record that would lead the ALJ to conclude that the second youngest daughter was caring for the infant for the past four years. In fact, there is no evidence at all as to the care of plaintiff's youngest child from 1975–1977 while plaintiff was working, or from 1977 to the time of the hearing while plaintiff was incapaci-

---

7. The only discussion relevant to this matter was:

Q. And, you had not worked since July of '77?
A. No.

Q. Why not?
A. Because I have trouble with my (INAUDIBLE).
T.29. *See also* T.30.

92

tated.[8] The record shows only that the elder daughter and son shared the responsibility for household chores and that the daughter does the cooking for the family "when she comes home from school." T.33. Thus, on the basis of the hearing record, there is not substantial evidence to support the ALJ's rejection, as unreasonable, of the testimony of plaintiff with respect to her activities at home.

Finally, the ALJ's bald assertion that plaintiff did not appear like a person in constant pain, T.10, does not constitute substantial evidence sufficient to rebut the findings of Drs. Schaye and Schvartz. That assertion is belied by the observations of the ALJ at the time of the hearing, quoted *supra,* pages 89–90. In addition, his written conclusion after the hearing

> also raises serious questions with respect to the propriety of subjecting claimants to a "sit and squirm index," and with respect to rendition by the ALJ of an expert medical opinion which is beyond his competence.

*Aubeuf v. Schweiker,* 649 F.2d 107, 113 (2d Cir. 1981) (footnotes omitted).

2. *Consultative report*

The second factor—Dr. Outes' consultative report—does not sufficiently rebut the findings of plaintiff's treating physicians. *Cf. Eiden v. Secretary of H. E. W.,* 616 F.2d 63, 65 (2d Cir. 1980). It consists of comments, conjectures and some irrelevant observations,[9] but does not provide any objective basis for the doctor's views. Furthermore, although the ALJ wrote in his determination that Dr. Outes' report was more detailed than the residual function capacity evaluations of Drs. Schaye and Schvartz, the "Physical Capacities Evaluation" sheet submitted by Dr. Outes omits most of the requested information because the doctor did not have sufficient background, after a single evaluation, to provide an estimate.

In addition, there is nothing in the record to support the ALJ's preference for Dr. Outes' conclusion that "[plaintiff's] condition at this time is not different than it was during the time she was working full-time" over the opposite findings of plaintiff's treating physicians. This point is particularly important in light of the fact that Dr. Outes examined the plaintiff only once, on January 28, 1981, four years after the claimed disabling impairment, as found by Dr. Schvartz.

In summary, the Court finds that the above-mentioned factors, taken alone or together, do not satisfy the test set forth in *Aubeuf, McLaughlin* and *Bastien* for rejection of the findings of treating physicians. Therefore, the determination of the Secretary must be reversed.

CONCLUSION

The determination of the Secretary denying plaintiff's application for disability benefits is hereby reversed. The case is remanded for further proceedings consistent with this Opinion. The matter is hereby discontinued with leave by the parties to reopen upon adverse determination after remand. Jurisdiction is retained accordingly.

It Is So Ordered.

8. The daughter was born in 1975, and thus was over the age of two at the time plaintiff claims she became disabled.

9. For example: 1) "[T]he patient was working for seven years with the same condition; 2) "[T]he condition may get worse regardless of bedrest"; and 3) "Should this patient be asked to have complete bedrest for the remainder of her life?"