**Mildred DESMOND, Plaintiff,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant.**

No. 79 CV 3185 (ERN).

United States District Court, E. D. New York.

Aug. 30, 1982.

Max D. Leifer, Astoria, N.Y., for plaintiff.

Edward R. Korman, U. S. Atty., E.D.N.Y. by Jan F. Constantine, Asst. U. S. Atty., Brooklyn, N.Y., for defendant; Frank V. Smith, III, Regional Atty., Region II, Dept. of Health & Human Services, New York City, of counsel.

## MEMORANDUM OF DECISION AND ORDER

NEAHER, District Judge.

This is an action brought under 42 U.S.C. § 405(g) for judicial review of a final decision of the Secretary of Health and Human Services (Secretary) which denied plaintiff's application for Social Security disability insurance benefits. That decision was, of course, based upon the findings and conclu-

sions of an administrative law judge (ALJ) made after a *de novo* hearing held on July 25, 1979. In reviewing those findings, "Congress has instructed us that the factual findings of the Secretary, if supported by substantial evidence, shall be conclusive." *Rutherford v. Schweiker,* 685 F.2d 60 at 62 (2d Cir.). This means "that factual issues need not have been resolved by the Secretary in accordance with what we conceive to be the preponderance of the evidence." *Id.*

"Substantial evidence" has been defined as

"more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971), quoting from *Consolidated Edison Co. v. NLRB,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938).

Plaintiff was 46 years old, 5′ 1″ in height, and weighed 200 pounds at the time of her hearing. Tr. 29, 58, 116.[1] She is married, has three years of high school, and began working in 1967 after raising her children. Tr. 22, 23, 25. Her last employment was as clerk-typist in a medical office for six and a half years. Tr. 23, 25. That work required sitting about seven hours, standing about an hour with some walking, and doing some filing in addition to typing patients' billings and statistical data. Tr. 74.

On March 26, 1976, her employer placed her on disability due to back pain. Tr. 23, 146. She was hospitalized on April 2 for a myelogram examination, which indicated a herniated disc. Tr. 145. She was later hospitalized at the N.Y.U. Medical Center Hospital where she came under the care of Dr. Arthur F. Battista, a neurosurgeon, and showed improvement after a period of bed rest. Tr. 146, 148. She was discharged on May 5, 1976, with his recommendation for conservative therapy and weight reduction in view of her "somewhat obese" condition. *Id.* She was seen again by Dr. Battista in

---

1. References are to pages of the transcript of the administrative record.

September 1976, who noted her "significant" reduction in weight to 154 pounds, her household activities, and her ability to climb stairs. Tr. 148. His examination found "no limitation of movements" and "[n]o focal muscle weakness detectable." *Id.* He thought that in a month she might achieve "a level of activity which will allow her to return to part time employment." *Id.*

On October 16, 1976 plaintiff's period of disability with her employer ended. Tr. 23. She stated that she saw her doctor and feeling slightly better, believed Dr. Battista's opinion that she was able to return to work. Tr. 23, 78, 79. She therefore applied for State unemployment benefits and received $95 weekly until November 1977, but found no work during that year. Tr. 25, 26.[2] In fact, on July 31, 1977, she entered La Guardia Hospital for the removal of a breast tumor which proved to be a benign lipoma, and was discharged on August 3, 1977. Tr. 102.

On June 26, 1978 plaintiff filed her application for disability benefits, claiming "asthma, spinal problem affecting left leg and back," with onset date of March 26, 1976. Tr. 58. Shortly before and after the filing, she was treated by Dr. Henry Levis, who reported on August 29, 1978, that "Patient still has pain in lower back, pain in left knee, tenderness in medial joint," was "very obese," and "has definite problem." Tr. 106–09. He found, however, that she could sit and stand for a half hour, walk 1 or 2 blocks, lift or carry 5 to 10 pounds, and that her ability to perform fine and gross hand motions was "OK." She could not, however, climb stairs, or bend and kneel. Tr. 109. Dr. Levis gave no opinion as to whether or not plaintiff could return to work.

On September 8, 1978 plaintiff was examined on behalf of the Bureau of Disability

Determinations by Dr. Kenneth E. Seslowe, a specialist in orthopedic surgery. He found tenderness in the left lumbosacral region along the course of the sciatic nerve, observing that plaintiff was obese but "in no acute distress." X-rays taken at the examination revealed evidence of the old myelogram but none of any fracture or dislocation. He concluded that her ailment was "chronic lumbosacral sprain, left sided sciatica." In his opinion she could walk 5 blocks, sit for an hour at a time, and walk one flight of stairs, and noted that fine and gross motions of her upper extremities were unaffected. Tr. 119.

On November 5, 1978 plaintiff was again admitted to La Guardia Hospital, complaining of longstanding pain in the left knee. Dr. Harvey H. Lewis, an orthopedic surgeon then attending her, ordered an arthroscopy which revealed that she had chondromalacia of the patellofemoral joint,[3] not a torn meniscus. His report notes she was discharged two days later in "improved condition." Tr. 122.

On February 13, 1979 plaintiff was examined a second time at the request of the Bureau of Disability Determinations. The examining orthopedic specialist, Dr. Irving Mauer, noting her obesity, concluded after orthopedic and x-ray examinations that plaintiff has an obvious kyphoscoliosis[4] and a postural low back derangement which limits her activities. Noting that plaintiff did not have surgery after the myelogram, he saw no evidence of nerve root pressure secondary to disc herniation. He concluded that plaintiff could not bend but could walk about 4 or 5 blocks, stand about 2 hours, lift 5 pounds, and have no difficulty sitting for 2 hours, or with finely [or] gross manipulation of her hands. Tr. 129.

On April 16 and again on July 18, 1979— the latter date being a week prior to plaintiff's hearing—Dr. Harvey Lewis wrote two

---

**2.** Under New York law, it is a basic condition for such benefits that a claimant "is able to work, and available for work." McKinney's N.Y. Labor Law § 527.

**3.** Defined in Dorland's *Medical Dictionary* as "preternatural softness of the cartilages." *Id.* p. 299.

**4.** Defined in Dorland's *supra*, as "Backward and lateral curvature of the spinal column." *Id.* p. 787.

letters "To Whom It May Concern" stating that although she had been under his care for a year, therapy treatments had not helped her "multiple complaints." He opined that she was currently permanently disabled and "should have Social Security Disability payments" since she cannot go up and down stairs,[5] has "difficulty" in subways and buses, and is "incapable of performing normal household duties." Tr. 130, 137.

There is no question that plaintiff has impairments of her lumbar spine and of her knee which were probably productive of some pain and limited to some extent the normal activities of walking, standing, sitting, weightbearing and lifting. Leaving aside the question of pain, however, the medical and other evidence in the record provides ample substantial evidence to support the Secretary's finding that plaintiff's impairments were not of such severity as to prevent her from performing her former work as a clerk typist. That finding may not be rejected on the basis of Dr. Lewis' sweeping opinion that plaintiff is "permanently disabled."

As plaintiff recognizes, Memorandum of Law at 15, the rule that a treating physician's expert opinion on the issue of disability is binding on the Secretary, *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir. 1978), is efficacious only when there is no contradictory medical evidence. Dr. Lewis' name did not appear in the record until September 30, 1978, when he prescribed a back-support brace for plaintiff. Tr. 120. This was some three months after she had filed her application for disability benefits claiming her disability began March 26, 1976, some two and a half years earlier. Tr. 58. Previously, in September 1978, she told Dr. Pramod Jain, to whom she was referred by the Department of Social Services, that her back pain became worse when she "is washing or cleaning the house" and is relieved by rest. Tr. 116. At that time she mentioned having pain in her left knee "for the last four months." *Id.* She also stated then that she had had bronchial asth-

ma for the last 22 years but was in "complete remission and has no shortness of breath." *Id.* Dr. Jain's report also reveals that in the two and a half years since she left her employment to go on disability, she increased her weight from 154 pounds to 193 pounds, contrary to the advice of Dr. Battista, who was treating her in May 1976 and released her to return to work the following November. Tr. 10, 146.

Turning to the question of pain, the ALJ was, of course, required to consider and evaluate plaintiff's subjective complaints of pain and symptomatology, and it is clear that he did so. Tr. 11, 12. Although claims of pain need not be supported by objective evidence, the degree of pain experienced must be of such severity as to preclude a claimant from performing any work. However, it is settled that the ALJ

"is not obliged to accept without question the credibility of such subjective evidence. The ALJ has discretion to evaluate the credibility of a claimant and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979) (citations omitted).

The foregoing rule is based upon the obvious fact that the ALJ, as the judicial officer who sees and hears the claimant testify, is in the best position to determine credibility.

Here, in evaluating the credibility of plaintiff's claims of disabling back and knee pain, the ALJ was entitled to consider evidence which was inconsistent with such claims. For example, although plaintiff claimed a disability onset as of March 26, 1976, she accepted a year of benefit payments thereafter from the New York Unemployment program which were based on her representations that she was willing and able to work but could not find a job. Again, although claiming disability due to back pain since March 1976, it was not until two and a half years later—months after she filed for Social Security benefits—that

---

**5.** Plaintiff's sister, a witness at the hearing, testified that plaintiff had to "run up and down stairs" to use the bathroom in her house. Tr. 46.

a back-support brace was prescribed for her. And, as already noted, plaintiff's claim that she cannot go up and down stairs must be viewed in light of her sister's testimony that she must do so in order to use the bathroom in her home. Tr. 46. Similarly contrary to plaintiff's claim of severe pain is the nature of her medication. The drugs she takes to relieve pain are mostly of the common non-prescription variety, *e.g.*, aspirin, Tylenol, Excedrin, except for Darvon, a prescribed analgesic. Tr. 36.

The Court has taken into account that plaintiff was not represented by an attorney at her hearing. The record reveals, however, an extensive collection of medical records and reports concerning her, including two separate consultative examinations. No claim is made by her present attorney that the ALJ did not fulfill his obligation to ensure that all pertinent medical or other evidence was produced. His only objection is to the outcome.

Accordingly, the Secretary's decision is affirmed and judgment dismissing the complaint is granted.

SO ORDERED.