Margaret CANTWELL, Plaintiff,

v.

SECRETARY OF the DEPARTMENT OF HEALTH AND HUMAN SERVICES OF the UNITED STATES, Defendant.

No. CV 85–1214.

United States District Court, E.D. New York.

April 18, 1986.

Binder & Binder by Charles E. Binder, Hauppauge, N.Y., for plaintiff.

Reena Raggi, Acting U.S. Atty. by Kiyo A. Matsumoto, Asst. U.S. Atty., Brooklyn, N.Y., for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

Margaret Cantwell ("Cantwell") brings this action under § 205(g) of the Social Security Act ("Act"), as amended, 42 U.S.C. § 405(g), for review of a final determination of the Secretary of Health and Human Services ("Secretary") which denied plaintiff's application for a period of disability and disability insurance benefits. The parties have cross-moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c).

Cantwell was born on October 4, 1930. She is a high school graduate with two years of college, and worked for insurance companies until the end of July 1982. Her jobs in the insurance industry included that of premium auditor, a position in which her duties entailed, among other things, using records provided by businesses in order to figure out the proper premium and working with monthly statistical reports. For this job she was specifically trained in bookkeeping, accounting, and auditing. Cantwell also worked as a supervisor over five or six people and reviewed and translated computer output used to provide annual dividend payments. Prior to these positions, plaintiff worked as a lead insurance collector (Tr. 71, 85–8, 103).

Cantwell applied for disability insurance benefits on September 27, 1983, alleging a period of disability commencing July 30, 1982. Her application was denied initially and on reconsideration. Plaintiff then requested a hearing, which was held on June 13, 1984 in front of an Administrative Law Judge ("ALJ") who considered the case *de novo* (Tr. 71–80).

At the hearing, Cantwell testified that her knees were very weak, painful, and stiff due to arthritis. She stated that on occasion she would get severe chest pains and have trouble breathing. She was reluctant to take nitroglycerin, however, for fear she would pass out. She also noted

that she had high blood pressure. She got "lots of headaches," which a doctor had told her were a result of "nerves." Plaintiff testified that an additional reason she could not return to her position with an insurance company was that she got drowsy very often and did not think she could stay awake long enough to perform her duties on the job. Cantwell stated that she had left her job because "the pressure got to me. I felt I was on the verge of a nervous breakdown, and I couldn't really keep up with the work," and remarked, "Anything will make me nervous. Sitting outside makes me nervous." (Tr. 27, 30–5, 41).

In an opinion dated September 17, 1984, the ALJ concluded that plaintiff was not disabled. The ALJ found that the medical evidence established that Cantwell had diabetes mellitus, hypertension, osteoarthritis, chronic benign fibrillation, and an adjustment disorder. These ailments, however, did not constitute an impairment or combination of impairments listed in, or medically equivalent to an impairment listed in, 20 C.F.R. § 404, Subpart P, Appendix 1. The ALJ determined that plaintiff retained the physical and mental capacity to perform her past relevant sedentary, semi-skilled work as a lead collector in the insurance industry and had acquired work skills which could be applied to meet the requirements of semi-skilled work functions of other sedentary jobs such as accounts receivable clerk, payroll clerk, general accounting clerk, and cashier. The ALJ rejected Cantwell's subjective complaints of pain, visual disturbance, nervousness, and fatigue as "not credible." Additionally, the ALJ held that plaintiff's nonexertional mental impairment did not significantly limit her ability to perform the full range of sedentary work (Tr. 13–14).

The ALJ's ruling became the final decision of the Secretary when it was approved by the Appeals Council on March 4, 1985.

The record contains, in addition to Cantwell's testimony at the hearing, the testimony of a non-examining physician and a vocational expert, and reports from a number of treating and consultative physicians. Generally, a court must consider whether such evidence on the record constitutes the "substantial evidence" necessary to support the Secretary's determination. The Secretary's determination as to whether a given individual is disabled under the Act is conclusive and not to be disturbed by a court upon judicial review if the Secretary's decision is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978). Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971).

■ In the case at bar, however, the Court need not reach the question of whether the Secretary's determination is supported by substantial evidence on the record. Cantwell's testimony, the testimony of the non-examining physician Dr. Richard Wagman (Tr. 50–51), the reports of Dr. Daryl DiDio, a clinical psychologist and Ms. Dale DiDio, a certified social worker (Tr. 173–80; Plaintiff's Exhibit "B"), and the ALJ's opinion (Tr. 8–14), make clear that plaintiff's mental and emotional condition may be relevant to her ability to work. On October 9, 1984, Congress enacted the Social Security Disability Benefits Act of 1984 ("Reform Act"). Pub.L. No. 98–460, 98 Stat. 1794 (1984). Section 5 of the Reform Act established a moratorium on mental impairment reviews. § 5(c)(1) states:

Any initial determination that an individual is not under a disability by reason of a mental impairment and any determination that an individual is not under a disability by reason of a mental impairment in a reconsideration of or hearing on an initial disability determination, made or held under title II or XVI of the Social Security Act after the date of the enactment of this Act and prior to the

date on which revised criteria are established in accordance with subsection (a), and any determination that an individual is not under a disability by reason of a mental impairment made under or in accordance with title II or XVI of such Act in a reconsideration of, hearing on, review by the Appeals Council of, or judicial review of a decision rendered in any continuing eligibility review to which subsection (b)(1) applies, shall be redetermined by the Secretary as soon as feasible after the date on which such criteria are so established, applying such revised criteria.

42 U.S.C. § 421 note.

The required revised criteria for disability as a result of mental impairment were promulgated and published on August 28, 1985. 50 Fed.Reg. 35,038 (to be codified at 20 C.F.R. § 404, Subpart P, Appendix 1).

 Cantwell's hearing was held on June 13, 1984, prior to the passage of the Reform Act. The Appeals Council, however, did not approve the ALJ's ruling until March 4, 1985, a date lying in between the Reform Act's passage and the promulgation of the new regulations. Accordingly, the Court remands Cantwell's case to the Secretary with the instruction that the decision that plaintiff is not disabled is to be redetermined applying the revised criteria for disabling mental impairments.[1]

SO ORDERED.

---

1. It might be argued that a strictly literal reading of § 5(c)(1) indicates that in a situation such as that now before the Court, remand is not necessarily required, *i.e.*, it could be asserted that the statute, by its specific wording, requires redetermination where review by the Appeals Council occurred between the date of the statute's enactment and the date of the required regulations' promulgation only where a continuing eligibility review is involved, while such redetermination of an *initial* finding of non-disability is mandatory only when the initial determination or reconsideration of or hearing on such an initial determination falls within this time frame. Such an unduly restrictive reading of the statute, however, would contravene the stated purpose of § 5 of the Reform Act to halt the application of inadequate regulatory standards concerning mental impairments while revised criteria "designed to realistically evaluate the ability of a mentally impaired individual to engage in substantial gainful activity in a competitive workplace environment," Pub.L. No. 98–460, § 5(g), 98 Stat. 1794, 1801, were developed. 42 U.S.C. § 421 note. Furthermore, even if this unduly narrow interpretation of § 5(c)(1) were to be adopted and remand of Cantwell's case therefore not *necessarily* required by the Reform Act, the Court undoubtedly has the power to order a remand for the purpose of achieving a resolution in conformity with the Secretary's current regulations, especially where Congress so clearly recognized the insufficiency of prior regulations concerning the existence of mental impairments. 42 U.S.C. § 405(g).