Bobby SMITH, Plaintiff,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant.

No. C-3-80-43.

United States District Court,
S. D. Ohio, W. D.

July 21, 1982.

---

John A. Cervay, Dayton, Ohio, for plaintiff.

Joseph E. Kane, Asst. U. S. Atty., Columbus, Ohio, for defendant.

DECISION AND ENTRY REJECTING MAGISTRATE'S REPORT IN ITS ENTIRETY; PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OVERRULED; DEFENDANT'S MOTION FOR SUMMARY JUDGMENT SUSTAINED; TERMINATION ENTRY

RICE, District Judge.

This matter is before the Court pursuant to Defendant's objections, filed under 28 U.S.C. § 636(b)(1)(C), to the Magistrate's Report and Recommendation that Plaintiff's motion for summary judgment be sustained.

Plaintiff filed applications for disability insurance benefits and supplemental security income benefits on September 19, 1978, alleging that he had been disabled and unable to work, as of December 2, 1977, due to ankle and leg injuries. He later asserted that he was also disabled due to back pain. The claims were denied initially and upon reconsideration by the Social Security Administration, whereupon Plaintiff requested a hearing. On July 31, 1979, a hearing was held before an Administrative Law Judge (ALJ), before whom Plaintiff appeared with his attorney. In addition, the ALJ received testimony from Dr. Harold Silver-

man, a vocational expert. On September 18, 1979, the ALJ rendered a decision finding that Plaintiff was not under a disability and was not entitled to benefits. Plaintiff then requested review by the Appeals Council, and the Council affirmed the ALJ's decision on January 24, 1980.

On February 19, 1980, Plaintiff filed his complaint in this Court, seeking judicial review of the administrative decision. The matter was referred to the United States Magistrate on the same date. Plaintiff filed his motion for summary judgment on July 25, 1980, alleging a closed period of disability for the period from December 2, 1977 to December 21, 1978. Despite being granted an extension of time until August 6, 1980, Defendant failed to timely file a motion for summary judgment, or to otherwise plead. The Magistrate issued his report on August 8, 1980, recommending that Plaintiff's motion for summary judgment be sustained. In said Report, the Magistrate pointed out that Defendant had not pleaded within the permissible deadline, and he stated that he reached his recommended decision by examining the administrative record, and by considering Plaintiff's motion for summary judgment. Report at 1–2.

On August 15, 1980, Defendant filed a motion requesting this Court to review the Magistrate's decision, contending that, in reality, the Magistrate was recommending an impermissible default judgment, and, in any event, the Report did not specifically set forth the reasons for the decision contained therein. Defendant filed a motion for summary judgment, with an accompanying memorandum, five days later.

## I. THE MAGISTRATE DID NOT RECOMMEND AN IMPERMISSIBLE DEFAULT JUDGMENT, AND HIS REPORT SPECIFICALLY SETS FORTH THE REASONS FOR HIS CONCLUSION

██ In several cases, procedurally similar to the instant matter, this Court has considered, and rejected, the Secretary's arguments that the Magistrate recommended an

impermissible default judgment, and that his Report fails to provide an adequate basis for his conclusion that Defendant's decision was not supported by substantial evidence. *See, Estes v. Harris*, 512 F.Supp. 1106, 1109–12 (S.D.Ohio 1981); *Johnson v. Harris*, 512 F.Supp. 339, 342–45 (S.D.Ohio 1981). The discussion in those cases is fully applicable to the Magistrate's Report under review in this case. Said Report, either in effect or in actuality, does not recommend the entering of a default judgment against the Secretary. In addition, the Magistrate adequately stated the reasons for his conclusion, by referring to Plaintiff's motion for summary judgment, and the memorandum attached thereto. Accordingly, the Report will not be rejected by this Court on these bases.

The Court now turns toward its obligation to examine said Report on a *de novo* basis. In so doing, the Court notes that it has examined the entire record. In addition, the Court has analyzed the legal arguments and factual references raised by Defendant in his motion for summary judgment and accompanying memorandum, although such consideration was certainly not required, in light of the untimely filing of those documents.

## II. DE NOVO REVIEW

██ In reviewing the decision of the Secretary, the Magistrate's task is to determine if that decision is supported by "substantial evidence." Under 28 U.S.C. § 636(b)(1)(C), this Court, upon objections being made to the Report of the Magistrate, is required to make a *de novo* review of those recommendations of the Magistrate's Report to which objection is made. This *de novo* review, in turn, requires this Court to reexamine all the relevant evidence, previously reviewed by the Magistrate, to determine whether the findings of fact by the Secretary are supported by "substantial evidence." 42 U.S.C. § 405(g); *Parish v. Califano*, 642 F.2d 188, 189 (6th Cir. 1981). The Supreme Court has stated that substantial evidence means:

[M]ore than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). *See also, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524, 535 (6th Cir. 1981); *Gibson v. Secretary of Health, Ed. and Welfare,* 678 F.2d 653, 654 (6th Cir. 1982).

To obtain benefits under the Social Security Act, the burden is initially on the claimant to show disability which prevents him from performing his usual work. The disability must result from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(C). Once the claimant establishes a prima facie case of disability, the burden shifts to the Secretary to go forward with proof that the claimant has residual capacity for substantial gainful employment, and that there are jobs in the national economy which the claimant can perform. *Young v. Califano,* 633 F.2d 469, 470 (6th Cir. 1980); *Slaven v. Harris,* 508 F.Supp. 280, 283 (S.D.Ohio 1981). To meet this burden, the Secretary must show that the claimant can engage in substantial gainful work in light of the claimant's age, education, work experience and physical condition. 42 U.S.C. §§ 423(d)(3)(A), 1382c(a)(3)(B). Such a showing is met by reliance on the testimony of a vocational expert, or by applying the relevant medical-vocational guidelines. *Kirk, supra,* 667 F.2d at 530–31.

Plaintiff herein was born August 9, 1946, is married with three children, attended school until the fifth or sixth grade, and is illiterate (Tr. 30–31). He has worked as a roofer, a forklift operator, and a truck driver (Tr. 74). Virtually all of the medical evidence in the record concerns the period between December 2, 1977 (when Plaintiff injured his ankle while working as a roofer) and May 3, 1979 (when Plaintiff returned to work, Tr. 36).

After reviewing the medical evidence in the record (Tr. 14–16), the ALJ, relying upon the sequential analysis of disability found in 20 C.F.R. § 404.1503 (1979) (now 20 C.F.R. § 404.1520 (1982)), held that Plaintiff was not disabled. Specifically, the ALJ held that Plaintiff did not establish that he met the listing of impairments in 20 C.F.R. Subpart P, App. 1, § 12.05(C) (1979), for disability based on mental retardation. That provision states that a disability is established when the claimant has an

IQ of 60 to 69 inclusive (see § 12.00B4) *and* a physical or mental impairment imposing additional and significant work-related limitation of function.

(emphasis added). Based on Dr. Evans' psychiatric testing (Tr. 117–121), there is no dispute that Plaintiff has an IQ of 68, thus meeting the first portion of § 12.05(C). However, the ALJ also held (Tr. 17) that Plaintiff had not met the second requirement of § 12.05(C), in that his ankle injury, by the summer of 1978, was sufficiently ameliorated so as to enable him to engage sedentary work. The ALJ went on to hold (Tr. 18) that Plaintiff was not disabled, applying Rules 201.26 and 201.23 of the medical-vocational (or "grid") guidelines.

In his motion for summary judgment, Plaintiff herein advances three principal challenges to the ALJ's decision. First, he argues that he *did* meet both requirements of § 12.05(C), in that his IQ was 68 and his ankle injury constituted an "additional and significant" physical impairment. Turning toward the application of the Rules of the grid, he contends that there is no evidence in the record of a residual functional capacity to perform sedentary work until December of 1981. Finally, he argues that the ALJ improperly applied said Rules in the first instance, since he claimed a non-exertional impairment (i.e., mental retardation) and the vocational expert was not asked about jobs for persons with such an impairment. (Doc. 20, pp. 2–3, 8–9).

Having considered all the evidence and pleadings in the record, the Court finds that while this case may be a relatively close one, there is, nevertheless, substantial

evidence in the record to support the Secretary's decision. The Court will respond to the points raised in Plaintiff's motion for summary judgment, by considering said arguments in reverse order.

Plaintiff incorrectly assumes that an allegation of a non-exertional impairment renders the grid inapplicable. It is true, as Plaintiff asserts, that the grid
> specifically disclaims an ability to predict disability when non-exertional limitations are the focus of a claimant's impairment.

*Kirk, supra,* 667 F.2d at 528 (citing 20 C.F.R. Subpart P, App. 2, § 200.00(e) (1981)). However, it is also true that
> before reaching the conclusion that the grid will not be applied because claimant alleges non-exertional limitations, those non-exertional limitations must be severe enough to restrict a full range of gainful employment at the designated level . . . . If appellant's argument were taken to its logical conclusion, any allegation of non-exertional limitations would preclude resort to the grid and thus frustrate the Congressional intention of simplifying and expediting the adjudicative process.

*Kirk, supra,* 667 F.2d at 537.

The ALJ specifically considered this point, that is, whether the non-exertional limitations revealed in Dr. Evans' report restricted Plaintiff's employment at the sedentary level (Tr. 18). In holding that said limitations did not prevent all work activity, the ALJ relied on a question to the vocational expert, wherein the expert *was* asked to assume the veracity of the findings in Evans' report (Tr. 47–48). The expert responded that said findings would preclude some, but not all, work activity of a sedentary nature (Tr. 48).

In a related vein, Plaintiff also argues that the record reveals no evidence, at least until December of 1978, that Plaintiff had the residual capacity to perform sedentary work. But there is substantial evidence in the record to support the ALJ's conclusion that Plaintiff regained the capacity to perform sedentary work considerably before that date. Plaintiff did have an ankle operation in May of 1978, and was on crutches for several months (Tr. 37). As the ALJ pointed out (Tr. 15), the medical reports after discharge from the operation recommended treatment, and several of the doctors suggested that Plaintiff's complaints were largely psychogenic in origin. There is simply no direct indication, from the record, that Plaintiff was physically unable to perform at least sedentary work throughout 1978. Moreover, the vocational expert testified that skills from Plaintiff's previous work (non-sedentary in nature) were transferable to sedentary work (Tr. 48). In these circumstances, the Court finds that the Secretary met his burden of demonstrating that Plaintiff had the residual capacity to perform sedentary work, and that it was proper for the ALJ to apply Rules 201.23 or 201.26 of the grid.

Finally, Plaintiff asserts, putting the application of the Rules to one side, that the application of § 12.05(C) directs a finding of a disability. The second prong of that provision, as previously noted, requires a "physical . . . impairment imposing additional and significant work-related" limitations of function. Such an impairment is primarily manifested, Plaintiff again argues, by the ankle injury. But as discussed above, the medical evidence does not indicate a "significant" work-related limitation from the ankle injury for more than a short period. In addition, there was substantial evidence to support the ALJ's determination that while Plaintiff could not perform his *past* work, he could perform sedentary work.

Accordingly, for the aforestated reasons, Defendant's objections to the Report and Recommendation of the Magistrate are well taken, and said Report is rejected in its entirety.

WHEREFORE, Plaintiff's motion for summary judgment is overruled, and Defendant's motion for summary judgment is sustained. The Clerk of Court shall enter judgment for the Defendant.

The captioned cause is hereby ordered terminated upon the docket records of the United States District Court for the South-

ern District of Ohio, Western Division, at Dayton.