Eugene **BAYERSDORFER**, Plaintiff,

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES**, Defendant.

**No. 81 Civ. 354 (VLB).**

United States District Court,
S.D. New York.

Dec. 13, 1983.

Victor Fusco, Scheine, Fusco & Brandenstein, P.C., New York City, for plaintiff.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City, by William J. Brennan, Asst. U.S. Atty., for defendant HHS.

## MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

### I.

This is an action to set aside a determination by the Secretary of Health and Human Services denying plaintiff disability benefits. Both parties moved for judgment on the pleadings. I assigned the matter to Magistrate Washington to hear and report.

Magistrate Washington prepared a report and recommendation dated April 8, 1983, in which she recommended reversal of the Secretary's decision, the granting of the application for disability benefits, and a remand to the Secretary for further action consistent with that recommendation—e.g., calculation of benefits.

At the behest of the Secretary, I stayed consideration of the Magistrate's recommendation pending the review by the Supreme Court of the Second Circuit's decision in *Campbell v. Secretary of HHS*, 665 F.2d 48 (1981), *cert. granted*, 457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982). That case has now been decided, *Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

### II.

■ When an objection is made to a magistrate's report, the district judge is required to make a *de novo* review (28 U.S.C. § 636(b)(1)(C)). *See also Smith v. Secretary of HHS*, 544 F.Supp. 63 (S.D. Ohio 1982). So far as the final decision of the Secretary is concerned, it "is the function of this court not to make a *de novo* determination but to decide whether the Secretary's finding is supported by substantial evidence." *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978); *see also Gold v. Secretary of H.E.W.*, 463 F.2d 38, 41 (2d Cir.1972); 42 U.S.C. § 405(g). "Substantial evidence" means "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)).

■ I have made such a review. I find that the Secretary's determination that plaintiff is not disabled is not supported by substantial evidence. Magistrate Washington's recommendation is adopted, for the reasons set forth below. Plaintiff's motion for judgment on the pleadings is granted. The matter is remanded to the Secretary for the purpose of calculating the benefits due to plaintiff.

### III.

Plaintiff Eugene Bayersdorfer· is a 54 year old male who lives with his wife and three sons in Putnam County. He has a ninth grade education.

Prior to the hospitalization which led to his claim for disability plaintiff had had a consistent work history, and up to a month before his hospitalization he had never been unemployed. Plaintiff served in the armed forces from March, 1948 to October, 1948. He then worked unloading heavy equipment and accessories from freight cars. He was recalled into the army for a 13-month stint in 1950 and 1951. Thereafter he did maintenance work, involving moving furniture and constructing and taking down walls. In 1953 he went to work for a grocery chain: that job lasted some 20 years. His last position with that employer, that of grocery selector, entailed lifting crates and other packages onto trucks.

In 1973 plaintiff accepted a position with another grocery chain as a warehouse supervisor. This job required supervising approximately 50 employees in the loading of delivery trucks, and called for plaintiff's presence on the loading docks for a substantial part of each working day, placing seals on loaded trailers and opening the doors of other trailers to inspect their contents.

Plaintiff was laid off from this job in February, 1979. He immediately sought new employment, visiting five or six pro-

spective employers and bringing his resume.

On March 2, 1979, plaintiff was admitted to Putnam County Hospital after experiencing retrosternal pain. An initial electrocardiogram "showed sinus bradycardia and ST–T wave changes compatible with acute anterior wall myocardial infarction." A temporary pacemaker was inserted after he suffered several episodes of bradycardia. The pacemaker was removed three or four days later. He was discharged on March 28, with the following final diagnosis prepared by his attending physician, Dr. Chang, "ARTERIOSCLEROTIC HEART DISEASE, ACUTE MYOCARDIAL INFARCTION, STATUS POST TEMPORARY INSERTION OF TRANSVENOUS PACEMAKER FOR BRADYCARDIA. STATUS POST INGUINAL HERNIORRHAPHY, REMOTE."

In April, 1979 plaintiff filed an application for disability benefits, alleging he had been disabled since March 2 as the result of a heart attack. Following denial of this application based on the determination that his disability would not last a year, plaintiff filed a request for reconsideration on October 10, 1979. Upon reconsideration his application was again denied.

Plaintiff requested a hearing, which was held before an Administrative Law Judge ("ALJ") on December 17, 1979. The only witnesses who testified at the hearing were plaintiff and his wife. Plaintiff was represented by counsel.

On April 7, 1980 the ALJ rendered his opinion, deciding that while the plaintiff had met the earnings requirements of the Social Security Act for purposes of entitlement to disability benefits, plaintiff was not disabled. His significant findings with respect to disability follow:

\* \* \* \* \* \*

3. Following myocardial infarction on March 2, 1979, claimant had such improvement as to not prevent him from engaging in basic work-related functions.
4. Even if his impairment were "severe", he has not been prevented from engaging in his past relevant work as warehouse supervisor.
5. Even if he could not engage in his past relevant work, he is not prevented from engaging in light work and sedentary work.
6. Even if limited to sedentary work, considering claimant's age, education and his skilled work experience with transferrable skills, he would not be disabled under the regulations.

Decision of Administrative Law Judge, April 7, 1980 at 8.

The ALJ's decision was reviewed by the Appeals Council, which also considered additional medical evidence submitted by plaintiff. On November 26, 1980 the Appeals Council denied plaintiff's request for review, and the ALJ's decision became the final decision of the Secretary.

## IV.

The medical evidence before the ALJ consisted of the progress notes with respect to plaintiff while at the Putnam Community Hospital from March 2 to March 28, 1979 following his heart attack; three post-hospitalization reports from Dr. Paul Chang, plaintiff's attending physician; and the report of a consultative examination of plaintiff by Dr. Reuben Mokotoff. While at Putnam Community Hospital plaintiff was, at the request of Dr. Chang, examined by Dr. Kenneth Mirman, a cardiologist. Dr. Mirman's report was also a part of the record before the ALJ as an attachment to Dr. Chang's report of December 12, 1979, *infra.*

In May 1979, Dr. Chang prepared a residual functional capacity evaluation. He estimated that during an eight-hour work day, plaintiff could sit for eight hours; stand or walk for less than two hours; occasionally lift weights of up to ten pounds; occasionally carry weights of up to twenty pounds; occasionally bend, squat, or crawl; and use his hands for grasping and manipulating, but not for pulling. He could n
Dr. Chang found that plaintiff's
for making judgments and toler
related stress was "intact," an

was not impaired in hearing, seeing or speaking. With respect to "environmental limitations (i.e., exposure to dust, fumes, marked changes in temperature and humidity, etc.)," these were "to be avoided." Plaintiff's prognosis was "poor."

On July 23, 1979, Dr. Chang reported that he had last seen plaintiff on July 18th, at which time plaintiff was "asymptomatic of any cardiac symptoms." Dr. Chang added, "He is currently walking and doing well. He is on no medications."

On August 28, 1979 Dr. Chang reported as follows: plaintiff "suffers from arteriosclerotic heart disease, and is status/post myocardial infarction. He is presently asymptomatic as far as chest pains, but he is weak, and lethargic. He is also short of breath. He is presently taking Nitroglycerine for atypical angina."

In a report dated December 12, 1979 Dr. Chang stated that he considered plaintiff "totally and permanently disabled":

Mr. Eugene Bayersdorfer has been under my care since July 1975.

On March 2, 1979 the patient was hospitalized at Putnam Community Hospital with a two hour history of severe retrosternal pain. His history, physical examination suggested acute myocardial infarction and was confirmed by lab data as well as serial electrocardiograms.

His initial hospital course was complicated by marked bradycardia so that a pacemaker had to be inserted. He eventually recovered and discharged on March 28, 1979.

After discharge he continued to have symptoms in the form of chest pain with or without exertion. He was placed on nitroglycerin but with only poor results. I last saw Mr. Bayersdorfer on 12/5/79.

It is my opinion that Mr. Bayersdorfer suffered on 3/2/79 acute extensive myocardial infarction and that although he is relatively asymptomatic at rest, he is unable to be engaged in any gainful employment. As we well know that atypical angina after a myocardial infarction indicates a poor prognosis in terms of mobidity [sic] and mortality.

I consider him totally and permanently disabled.

Following the hearing plaintiff was examined at the request of the ALJ by Dr. Reuben Mokotoff, a board-certified specialist in internal medicine. His examination included a review of plaintiff's medical records, a chest x-ray, a physical examination, and an uncompleted treadmill stress test (including an EKG). Dr. Mokotoff observed that plaintiff took no medication except nitroglycerin at times. Based on plaintiff's statements, Dr. Mokotoff considered plaintiff's chest pains to be "typical of angina." He stated that the pains were substernal in location and radiated to the back and down both of the arms. Dr. Mokotoff remarked, "The pain stops when his activity stops." He described plaintiff as a well-developed, well-nourished, and pleasant individual. Plaintiff's heart tones were of fair quality, with no murmurs or gallops. The chest x-ray showed an elongation and rounding of the lower left cardiac contour and increased venous congestive changes. The EKG demonstrated an old inferior septic wall myocardial infarction.

Halfway through stage two of the treadmill stress test, plaintiff developed the appearance of arm pain and, because plaintiff had completed almost nine minutes of exercise, Dr. Mokotoff discontinued the test: he did not believe that it was safe to push plaintiff any further. He noted that "[w]hen the exercise stopped and [plaintiff] rested the arm pain disappeared. He was not unduly short of breath." Plaintiff had achieved a heart rate of only 103 beats per minute, and Dr. Mokotoff concluded that the results of the test had been normal. He diagnosed arteriosclerotic heart disease with a history of old inferior wall myocardial infarction.

## V.

Subsequent to the hearing, counsel for plaintiff submitted letters from Dr. J.D. Matis, a cardiologist, and Dr. Melvin Shulman, a psychiatrist, which were not before

the ALJ but were considered by the appeals council.

Dr. J.D. Matis, a specialist in cardiovascular disease and internal medicine, examined plaintiff on June 30, 1980. He described plaintiff as an obese adult male who did not appear to be acutely or chronically ill. He stated that plaintiff's heart was not grossly enlarged or displaced. There was a regular sinus rhythm, and no murmurs were heard. Plaintiff's lungs did show an occasional rale in the left base. He exhibited good coordination and muscle power of all extremities. His reflexes and sensation were normal. An EKG showed an old inferior wall myocardial infarction, and a chest x-ray showed a prominent aortic knob and rounding and hypertrophy of the border of the left ventricle. Dr. Matis' diagnosis was "arteriosclerotic heart disease" and "myocardial infarction," and he concluded that plaintiff was "totally disabled because of the resultant reduction in myocardial reserve." He stated that plaintiff was not capable of performing any type of work that would involve even a minimum of physical effort and noted that "a recurrent myocardial infarction will pose a life-threatening risk for the patient."

Dr. Melvin Shulman, a psychiatrist, examined plaintiff on June 30, 1980, and diagnosed in plaintiff an "Anxiety Neurosis (300.00), chronic, moderately severe and disabling, secondary to a myocardial infarction on 3/2/79." He concluded that plaintiff was unable to engage in any gainful employment. In his report dated July 7, 1980, Dr. Shulman included the following summary and conclusion:

Subsequently to his heart attack, the patient developed an Anxiety Neurosis which has become chronically fixed in time and which has been getting more and more severe and more and more disabling with the passage of time. It would appear to me that his anginal condition alone completely disables him from doing any kind of gainful employment at present or in the foreseeable future; the Neurosis enhances this disability significantly and can only get worse if his physical health and/or life circumstances do not improve. His only real chance for physical improvement would seem to be a bypass operation on the heart—this is an elective and risky procedure with mixed results and the decision for having it remains with the patient; up to this point, he is afraid to risk the operation and his personal physician advises against it. Perhaps time will push him into taking the risk; perhaps not. This type of Neurosis, although originally precipitated by a physical illness or injury, etc., develops a "life of its own" and will often continue relatively unchanged, even with improvement in the patient's circumstances. There is no way to predict what would happen here if he felt better physically and could live more normally or even work. Psychotherapy and medication for nervousness would be of no help to him presently.

## VI.

The plaintiff is disabled. The medical evidence before the ALJ indicated as much and there is no substantial evidence to the contrary. The ALJ apparently felt it necessary, however, to reject evidence which was binding on him, and carefully to select among all the evidence presented to him to find to the contrary.

As plaintiff's treating physician, Dr. Chang's opinions "as to the existence of a disability [were] binding on the [ALJ] unless contradicted by substantial evidence to the contrary." *Donato v. Secretary of HHS,* 721 F.2d 414 at 419 (2d Cir.1983) (quoting *Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978)); *Aubeuf v. Schweiker,* 649 F.2d 107, 112 (2d Cir.1981); *see also McLaughlin v. Secretary of HEW,* 612 F.2d 701, 705 (2d Cir.1980).

In his December 12, 1979 report Dr. Chang, who had been plaintiff's treating physician since 1975 and was his treating physician throughout his hospitalization, forthrightly asserted that plaintiff was disabled:

It is my opinion that Mr. Bayers suffered on 3/2/79 acute extensiv

cardial infarction and that although he is relatively asymptomatic at rest, he is unable to be engaged in any gainful employment. As we well know that atypical angina after a myocardial infarction indicates a poor prognosis in terms of mobidity [sic] and mortality.

I consider him totally and permanently disabled.

But the ALJ rejected this opinion of plaintiff's treating physician. In rejecting it he relied upon other reports of Dr. Chang which the ALJ decided were inconsistent with Dr. Chang's opinion; upon an opinion rendered by a consultant to Dr. Chang who examined plaintiff midway through his hospital stay; and upon Dr. Mokotoff's post-hearing examination which on its face was incomplete and hence at best inconclusive.

The ALJ questioned the credibility of Dr. Chang without examining him, deeming his opinion as to disability inconsistent with his prior reports. Thus the ALJ believed that Dr. Chang's residual functional capacity evaluation was inconsistent with his opinion of total disability. It is, of course, not inconsistent at all. A man such as plaintiff may well be able to perform the motor functions that Dr. Chang's evaluations indicated and yet risk his life by performing them. If in May 1979, when Dr. Chang had been asked about motor capabilities, he had also been asked about plaintiff's ability to work, he probably would have said, as he did in December 1979, that plaintiff was totally disabled. As it was, Dr. Chang volunteered in May, 1979 that plaintiff's prognosis was poor.

The ALJ cited in his decision an opinion by Dr. Kenneth S. Mirman to the following effect (the quotation is from the ALJ's decision):

On March 18, 1979, claimant underwent consultative examination by Dr. Kenneth S. Mirman, Board-certified internist with speciality in cardiovascular diseases. Upon examination the claimant stated that he felt "pretty good", and denied chest distress of any kind or dyspnea or palpitations. The doctor noted that claimant smoked two packs of cigarettes per day. He found the claimant clinically stable without any chest pain. He did not feel that the claimant needed any cardioactive medications and should simply continue to be monitored. Claimant was discharged from the hospital on March 28, 1979, to be followed by his internist, Dr. Paul Chang.

Dr. Mirman was a consultant brought in by Dr. Chang while plaintiff was a patient at Putnam Community Hospital. His opinion was rendered after plaintiff had been in the hospital for more than two weeks, and plaintiff was not released from the hospital until 10 days after the opinion was rendered. This context is important; Dr. Mirman's evaluation was given of a patient who had been very ill, who had had two weeks of bed rest, and who would not be well enough to be discharged from the hospital for another 10 days. Dr. Mirman's opinion, read in context, does not support the ALJ's findings that plaintiff was not disabled.[1]

The ALJ relied on Dr. Mokotoff, who examined plaintiff post-hearing at the request of the ALJ. Dr. Mokotoff concluded that the results of a treadmill test were normal. This was a test which the doctor halted after two of seven stages had been completed, because the plaintiff "had the appearance of arm pain." With this symptomatology Dr. Mokotoff "did not feel it was safe to push him any further."

There was, in short, no substantial evidence before the ALJ which contradicted Dr. Chang's opinion that plaintiff was "totally and permanently disabled."

## VII.

Nor was there any evidence before the Secretary, in addition to the evidence be-

---

1. Reference to smoking two packages of cigarettes a day obviously referred to plaintiff as he was before he was hospitalized; no findings are necessary to conclude that he did not smoke while in the hospital.

fore the ALJ, which would support a finding that plaintiff was not disabled.

In addition to the record which had been before the ALJ, the appeals council considered the opinions of Drs. Matis and Shulman, both of whom concluded that plaintiff was disabled.

The appeals council gave both opinions short shrift. It determined that Dr. Matis' opinion that plaintiff could not perform any kind of work due to his heart condition was inconsistent with other evidence that his heart condition was stable. It found Dr. Shulman's opinion that plaintiff was disabled by his anginal condition enhanced by neurosis inconsistent with Dr. Shulman's findings and with plaintiff's past mental status.

## VIII.

When this matter was last before me I deferred consideration of the Magistrate's Report and Recommendation because the magistrate in her Report and Recommendation had relied upon *Campbell v. Secretary of HHS*, 665 F.2d 48 (2d Cir.1981), with respect to which certiorari had been granted (457 U.S. 1131, 102 S.Ct. 2956, 73 L.Ed.2d 1348 (1982)), and which has since been reversed, *Heckler v. Campbell*, —— U.S. ——, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). That deferral of consideration was improvident, since *Campbell* had nothing to do with this case. The Secretary, absent substantial evidence to the contrary, was bound by Dr. Chang's opinion that plaintiff is totally disabled, and there is no substantial evidence to the contrary. The issues involved in *Campbell* are never reached in this case.

SO ORDERED.