**Dr. Val MANOCCHIO, Plaintiff,**

v.

**Dr. Louis W. SULLIVAN, Secretary of The Department of Health and Human Services, and Richard P. Kusserow, Inspector General of The Department of Health and Human Services, Defendants.**

No. 90–8114–CIV.

United States District Court, S.D. Florida.

July 12, 1991.

Holly Skolnick, Richard Garrett, for plaintiff.

Sheila Lieber, Gary Orseck, for defendant.

## ORDER ADOPTING REPORT AND RECOMMENDATION

PAINE, District Judge.

This matter comes before the court upon the Objection to the Magistrate's Report and Recommendation filed by plaintiff, DR. VAL MANOCCHIO ("MANOCCHIO") (DE 22). Defendants, DR. LOUIS W. SULLIVAN, Secretary of The Department of Health and Human Services, and RICHARD P. KUSSEROW, Inspector General of The Department of Health and Human Services ("HHS"), have jointly filed a Response to Plaintiff's Objection (DE 34), to which MANOCCHIO has not replied.

### 1. Background

The material facts in this suit are not in dispute. MANOCCHIO is a doctor licensed to practice medicine in the State of Florida. MANOCCHIO was employed for approximately ten weeks, on a part-time basis, by a health care facility known as Florida Medical Consultants. Part of MANOCCHIO's function at that facility was to supervise certain tests and medical procedures and sign health insurance claims pursuant to the Medicare Program.

On October 28, 1988, the United States Attorney's office for the Southern District of Florida filed an information against MANOCCHIO charging him with a misdemeanor violation (DE 13, Exhibit A). The information alleged that on June 11, 1984, MANOCCHIO made a fraudulent demand against the United States in violation of Title 18 Section 1003, by submitting a falsified health insurance claim under the Medicare program in the amount of $62.40. MANOCCHIO entered a plea of guilty to the misdemeanor information and was sentenced on March 17, 1989, to three years probation, restitution, and a fine of $1,000.00.

In January of 1990, MANOCCHIO received a letter from HHS informing him that, pursuant to Title 42, Section 1320a–7, he would be excluded from participating in the Medicare program (DE 13, Exhibit B). The letter further stated that Section 1320a–7, as amended in 1987 by Public Law 100–93 (the "1987 Amendment"), mandates that, for a conviction occurring subsequent to August 18, 1987, the minimum period of exclusion shall not be less than five years (the "Exclusion Period"). MANOCCHIO filed suit, alleging that, as applied to him, the Exclusion Period violates Article I, Section 9 of the United States Constitution, because such application is (i) punitive in nature, and (ii) retroactive. HHS moved to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6), on the grounds that the action fails to state a claim upon which relief can be granted (DE 10).

MANOCCHIO filed a response to the motion (DE 15), to which HHS replied (DE 18).

MANOCCHIO filed a motion for summary judgment (DE 12), and a statement of facts and supporting memorandum (DE 13). HHS responded to the motion for summary judgment (DE 18), and MANOCCHIO replied (DE 22).

MANOCCHIO also filed an amended complaint, adding the allegation that the

Exclusion Period as applied to him violates the double jeopardy clause of the Fifth Amendment to the United States Constitution (DE 16). HHS filed a second motion to dismiss (DE 20). MANOCCHIO filed a memorandum in opposition to the second motion to dismiss (DE 24), to which HHS replied.

The Court referred HHS's motion to dismiss, MANOCCHIO's motion for summary judgment, and HHS's second motion to dismiss to United States Magistrate Ann E. Vitunac for report and recommendations (DE 30). Magistrate Vitunac recommended that HHS's motion to dismiss be granted and that MANOCCHIO's motion for summary judgment be denied (DE 32). MANOCCHIO filed an objection to the Report and Recommendation (DE 33), to which HHS responded.

### 2. *De Novo* Review

■ In a civil action, the district court may refer to a United States Magistrate Judge, for proposed findings of facts and recommended disposition, the following: motions for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or to permit maintenance of a class action suit, to dismiss for failure to state a claim, and to involuntarily dismiss an action. Title 28 U.S.C. § 636(b)(1)(B). Within ten days after being served with a copy of the magistrate's report, any party may object to such proposed findings and recommendations. *Id.* Section 636 requires the district judge to conduct a *de novo* determination based upon the objection. *See Bayersderfer v. Secretary of Health and Human Services,* 578 F.Supp. 131, 132 (S.D.N.Y.1983). As contemplated by Congress in this section, *"de novo* determination" requires that the district judge is not bound by the magistrate's findings, and that he must review the record and make his own determinations. *Sims v. Wyrick,* 552 F.Supp. 748, 750 (D.C.Mo.1982); *see also Eley v. Heckler,* 734 F.2d 724, 726 (11th Cir.1984).

### 3. Analysis

■ The threshold question is whether the application of the Exclusion Period to MANOCCHIO constitutes "punishment." Both the *ex post facto* clause and the double jeopardy clause pertain only to sanctions that are punitive in nature. The Supreme Court held that the *ex post facto* clause prohibits any statute "which makes more burdensome the *punishment* for a crime, after its commission...." *Beazell v. Ohio,* 269 U.S. 167, 169–170, 46 S.Ct. 68, 68–69, 70 L.Ed. 216 (1925) (emphasis added). There can be no *ex post facto* violation if a sanction is merely remedial or regulatory rather than punitive. *See Flemming v. Nestor,* 363 U.S. 603, 616, 80 S.Ct. 1367, 1375, 4 L.Ed.2d 1435 (1960). Likewise, the double jeopardy clause prohibits the government from imposing a civil or criminal sanction that constitutes punishment when the defendant has already been punished for that offense. *See United States v. Halper,* 490 U.S. 435, 449, 109 S.Ct. 1892, 1902, 104 L.Ed.2d 487 (1989). Therefore, this Court must first examine the application of the Exclusion Period to MANOCCHIO and determine if that sanction constitutes punishment.

■ The Supreme Court has developed a two-prong test to determine whether a particular statutory penalty is remedial or punitive. *See, e.g., One Lot Emerald Cut Stones v. United States,* 409 U.S. 232, 237, 93 S.Ct. 489, 493, 34 L.Ed.2d 438 (1972); *United States v. Ward,* 448 U.S. 242, 248–49, 100 S.Ct. 2636, 2641–42, 65 L.Ed.2d 742 (1980). First, the court must determine whether Congress, in establishing the penalty, indicated either expressly or implied, a preference for one label or the other. *Ward,* 448 U.S. at 248, 100 S.Ct. at 2641. Second, where Congress has indicated an intention to establish a civil penalty, the court must determine whether the penalty was so punitive either in purpose or effect as to negate that intention. *Id.* at 248–49, 100 S.Ct. at 2641–42 (citing *Flemming,* 363 U.S. at 617–21, 80 S.Ct. at 1376–78).

### A. *Congress' Intention: Remedial or Punitive*

■ Congress did not express an intention for the Exclusion Period to be labeled remedial or punitive. However, in the 1987

Amendment which mandated the Exclusion Period, Congress did include statutory amendments that were specifically labeled "criminal." *See* 42 U.S.C. § 1320a–7b(a)(5). The designation of certain sanctions within the 1987 Amendment as criminal indicates a Congressional intention that the Exclusion Period is remedial in nature. *See* 73 Am.Jur.2d Statutes § 211 (1974).

B. *The Purpose or Effect of the Exclusion Period*

An examination of the legislative history of the 1987 Amendment indicates that the purpose of the statute was (i) to protect the Medicare program from fraud and abuse, and (ii) to protect citizens who rely on the integrity of the participants in the program. *See* S.Rep. No. 100–109, 100th Cong., 1st Sess. 1–2 (1987), *reprinted in* 1987 U.S.Code Cong. & Admin.News 682. MANOCCHIO bears the burden to show that there is no rational relationship between these nonpunitive interests and the Exclusion Period. *See Flemming,* 363 U.S. at 617, 80 S.Ct. at 1376; *see also United States v. Halper,* 490 U.S. 435, 449–50, 109 S.Ct. 1892, 1902–03, 104 L.Ed.2d 487 (1989).

MANOCCHIO has failed to meet this burden. Disqualifying a person from participating in a social program or practicing a profession because of offensive activity is not punishment, if the past activity is such that the public would have an interest in excluding the offender. *See United States v. Nasser,* 476 F.2d 1111 (1973); *see also Hawker v. New York,* 170 U.S. 189, 18 S.Ct. 573, 42 L.Ed. 1002 (1898) (exclusion of a convicted felon from the practice of medicine is not punitive and therefore does not violate the *ex post facto* clause); *Peeler v. Heckler,* 781 F.2d 649 (8th Cir.1986) (suspending social security benefits of incarcerated felons, even if partially punitive in effect, furthers a nonpunitive goal and does not violate the *ex post facto* clause). A district court has, in fact, specifically held that "the goals [of Section 1320a–7] are *clearly remedial* and include protecting beneficiaries, maintaining program integrity, fostering public confidence in the program, etc." *Greene v. Sullivan,* 731 F.Supp. 838, 840 (E.D.Tenn.1990) (emphasis added); *see also Bolduan v. Heckler,* No. 584–578 (N.D.Ind. filed Dec. 11, 1984) (exclusion of physician under Section 1320a is not punishment).

Clearly, there is sufficient public interest in excluding from the Medicare program anyone who has been convicted of filing fraudulent Medicare claims. Therefore, the Exclusion Period does not violate the *ex post facto* clause or the double jeopardy clause, because it is rationally related to a nonpunitive goal and is not a punishment.

Accordingly, the findings and recommendations of the Magistrate are approved and adopted, and hereby made the order of this Court. Thereupon, it is

ORDERED and ADJUDGED that the Plaintiff's Amended Complaint is hereby DISMISSED with prejudice. The Clerk of Court is directed to close the file.

DONE and ORDERED.