Milagros ROSARIO, a/k/a Milagros Marrerro Hernandez, a/k/a Milagros Hernandez Rosario, a/k/a Milagros Arzuaga, a/k/a Milagros Marrerro Arzuaga, a/k/a Milagros Marrerro, Plaintiff,

v.

Patricia R. HARRIS, Secretary of Health and Human Services,[1] Defendant.

Civ. A. No. 78–711.

United States District Court, D. New Jersey.

June 30, 1980.

---

1. We substitute Patricia R. Harris, the successor to Joseph A. Califano as Secretary of Health, Education and Welfare, as defendant in this action pursuant to Federal Rule of Civil Procedure 25(d). Effective May 4, 1980, the Department of Health, Education and Welfare was redesignated the Department of Health and Human Services. Department of Education Organization Act, Pub.L.No. 96–88, § 509 (1979).

Timothy K. Madden, Director, Hudson County Legal Services Corp. by Theodore A. Gardner, Jersey City, N. J., for plaintiff.

Robert J. Del Tufo, U. S. Atty. by Elizabeth T. Barlow, Asst. U. S. Atty., Newark, N. J., for defendant.

## OPINION

STERN, District Judge.

Plaintiff Milagros Rosario brings this action pursuant to section 205(g) of the Social Security Act, as amended, Title 42 United States Code, § 405(g), to review a final determination of the Secretary of Health, Education and Welfare (hereinafter "Secretary") denying plaintiff's application for a period of disability, Title 42 United States Code, § 416(i), and disability insurance benefits, Title 42 United States Code, § 423(a). The Court finds that this matter must be remanded because, as in too many similar cases, the Secretary failed to make factual findings regarding plaintiff's credibility.

■ Plaintiff filed an application for disability insurance benefits on November 11, 1974 (Tr. 129–32).[2] The application was

---

2. Plaintiff also applied for Supplemental Security Income benefits under Title 42 United States Code, § 1382, which she was granted by the Administrative Law Judge (Tr. 48). Entitlement to SSI benefits does not depend on estab-

denied initially (Tr. 135) and on reconsideration (Tr. 139). Plaintiff requested a hearing, which was held on April 1, 1977 (Tr. 75–128). The Administrative Law Judge before whom plaintiff appeared considered the case *de novo* and on April 29, 1977, found that plaintiff was not under a disability at the time her insured status expired (Tr. 40–48). The decision of the Administrative Law Judge became the final decision of the Secretary when it was approved by the Appeals Council on November 9, 1977 (Tr. 13–14).

The record discloses the following. Plaintiff is a forty-nine year old Hispanic woman who obtained a third grade education in Puerto Rico and has no facility with the English language. She worked for years as an industrial sewing machine operator; her only other adult job was as a field worker in Puerto Rico.

Plaintiff became ill in the late 1960's. She suffered from daily nausea and vomiting, abdominal pain, and constipation (Tr. 19–21). In October 1969, a superficial pyeloric ulcer and pelvic inflammatory disease were diagnosed (Tr. 21). On October 16, 1970, plaintiff underwent gallbladder and stomach surgery. (Tr. 27–28). Post-operative diagnosis was duodenal ulcer and cholelithiasis (Tr. 25). Plaintiff remained hospitalized for about 10 days and, according to her discharge records, had a chronic duodenal ulcer, cholecystitus and cholelithiasis (Tr. 28).

Three weeks after discharge, plaintiff's symptoms returned. In May 1971, she was readmitted to the hospital where the diagnosis was cholecystectomy (gall bladder) syndrome (Tr. 29). Plaintiff returned to the hospital in 1972 and 1973 with complaints of pain, nausea, vomiting, and diarrhea. A 1972 G.I. Series revealed a deformed duodenal cap (Tr. 32).

In 1974, plaintiff was treated at Cagua Sub-Regional Hospital in Puerto Rico for epigastric pain and vomiting (Tr. 199, 204). She was given medication and placed on a special diet. An upper G.I. Series performed in August in Connecticut confirmed the probable existence of an ulcer crater in the base of the duodenal bulb with attendant changes in the pyloric canal (Tr. 190).

In December 1974, after plaintiff's insured status expired, Dr. Jose A. Badillo performed a consultative examination at the request of the Social Security Administration. After his examination and review of a requested G.I. Series, he concluded that plaintiff had no abnormalities of the stomach, duodenum or esophogus. He did diagnose abdominal pain, but ruled out an ulcer and post-cholecystectomy syndrome (Tr. 205–11). He also found that plaintiff had only minor functional disabilities (Tr. 212).

The remainder of the objective medical and psychological evidence in the record indicates that from 1975 to 1977 plaintiff continued to suffer epigastric pain and vomiting (Tr. 235).[3] She was treated at Jersey City Medical Center (Tr. 231–62), where her condition was diagnosed as post-gastrectomy syndrome (Tr. 242).

The record further reveals that plaintiff became anxious and depressed. In 1977, Dr. Jose M. Reyes concluded that she suffers from a moderately severe neurotic depressive reaction which affects her physically and mentally (Tr. 213–14). Social Security interviewers and individuals to whom plaintiff was referred by the Administration confirmed that in 1977 plaintiff was mentally and physically ill (Tr. 181, 222, 264). Plaintiff's treatment consisted of medication and regular individual and group therapy (Tr. 227, 267–68).

Plaintiff's testimony at her April 1, 1977 hearing was barely coherent and the record notes that she sobbed continually.[4] She

---

lishing disability prior to the expiration of insured status.

**3.** Plaintiff also suffered from sinusitis (Tr. 256) and gynocological problems (Tr. 224–25, 229–30). She missed her initial hearing before the

Administrative Law Judge because of an emergency hysterectomy (Tr. 232).

**4.** Plaintiff was represented by counsel, who informed the Administrative Law Judge that he had seen plaintiff only once before the hearing because of her intervening hysterectomy (Tr.

exhibited an inability to remember dates[5] or to concentrate on the testimony (Tr. 103). Plaintiff testified that since 1970 she has vomited two or three times a day and has suffered from persistent pain and diarrhea. She lost weight (Tr. 120), spends a lot of time in bed or sitting by the window, and never ventures out of her house alone (Tr. 97). Much of the time she is unable to perform housework. She attempted to work outside her home, but was unable to do so because she had to spend so much time in the bathroom. Plaintiff stated that she takes seven or eight pills a day—which make her drowsy—and Maalox, but that the medication does not relieve her symptoms (Tr. 108, 109–10, 122). She has become increasingly anxious and depressed because of her physical condition. She now attends therapy sessions once a week (Tr. 115–16).

Plaintiff's testimony was supported by letters from two neighbors who confirmed her reports of persistent vomiting, weakness, inability to do housework and days spent at home in bed or sitting by the window (Tr. 185–88).

The Administrative Law Judge held that the claimant "retained the residual physical and mental functional capacity to work as a seated sewing machine operator from July 13, 1973 through September 30, 1974" (Tr. 47), and accordingly found that plaintiff was not entitled to disability insurance benefits. However, he found that, commencing May 26, 1976,[6] and continuing through the period during which the hearing occurred, plaintiff was

> suffering from a severe and disabling emotional impairment, which, in combination with her related secondary gastrointestinal manifestations, clearly reach a sufficient level of severity and duration so as to preclude any form of substantial

gainful activity on a sustained basis even of a light or sedentary nature similar to her former position.

(Tr. 46) (emphasis supplied). Thus, he concluded that plaintiff was entitled to Supplemental Security Income benefits.

The Administrative Law Judge's determination that plaintiff was not disabled on or before September 30, 1974, was based upon the 1974 records from Cagua Sub-Regional Hospital and the December 1974 report from Dr. Badillo, the only medical evidence in the record at the time he made his decision. He did not address plaintiff's testimony at the hearing or the letters from her neighbors, stating instead: "[I]t is not the words of a claimant or the words of a witness that proves [sic] the existence of an impairment but rather the objective medical proof furnished by a physician or hospital" (Tr. 43). Finally, he did not address the inconsistencies in the record with respect to the date plaintiff allegedly became unable to work, reciting merely

> The claimant . . . alleges onset of disability on June 15, 1973, due to a stomach condition (Exhibit 1). Thereafter, the claimant amended her onset date of disability to July 15, 1973 (Exhibit 12).

Tr. 44.

The remainder of the pre-1974 medical evidence currently before the court was made part of the record before the Appeals Council. The Appeals Council decision recites the list of records reviewed and states that the records show that (1) plaintiff's recovery from ulcer surgery was uneventful and that (2) there was no recurrence of her ulcer. The Council found that the additional evidence did "not affect the conclusion reached in the decision" of plaintiff's case (Tr. 13). It did not address the plaintiff's testimony or the contradictory allegations of the date of onset of her disability.

---

81–82), that he had difficulty communicating with her, and that her recall was poor (Tr. 85). The Administrative Law Judge's response was curt and less than sympathetic (Tr. 81–82). In addition, despite the incoherent nature of plaintiff's testimony, the Administrative Law Judge admonished counsel for using leading questions (Tr. 97).

5. Moreover, she was unable to state what city she resided in, or whether she was married or divorced (Tr. 118–20).

6. Plaintiff filed her application for SSI benefits on May 26, 1976.

The failure of these opinions to address the testimony or the contradictions in the record mandate a remand in this action. The law is clear that four elements of proof must be considered in determining disability: (1) objective medical facts and clinical findings, (2) diagnoses and medical opinions of examining physicians, (3) *subjective evidence of pain and disability as testified to by plaintiff and corroborated by others who have observed her*, and (4) plaintiff's age, educational background, and work history. The criterion for determining disability within the meaning of the Social Security Act[7] is not whether the objective medical evidence establishes the existence of a condition, but whether the condition produces certain functional limitations. Thus, all four elements must be considered in combination. *See Bastien v. Califano*, 572 F.2d 908 (2nd Cir. 1978); *De Paepe v. Richardson*, 464 F.2d 92 (5th Cir. 1972); *Bittel v. Richardson*, 441 F.2d 1193 (3rd Cir. 1971); *Mode v. Celebrezze*, 359 F.2d 135 (4th Cir. 1966).

Although this Court's role is limited by the Social Security Act to determining whether the Secretary's decision is "supported by substantial evidence," Title 42 United States Code, §§ 405(g) and 1383(c)(3); *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971), it is impossible for the Court to make a determination if it is unclear from the Administrative Law Judge's opinion what evidence he considered, what he rejected and the reasons for his decision with respect to each piece of evidence. As the Supreme Court stated in another context:

[C]ourts cannot exercise their duty of review unless they are advised of the considerations underlying the action under review. . . . [T]he orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed and adequately sustained.

*Securities and Exchange Commission v. Chenery Corp.*, 318 U.S. 80, 94, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1942); *see Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3rd Cir. 1979) ("[A] reviewing court may remand a case to the Secretary for good cause, 'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits'"); *Hargenrader v. Califano*, 575 F.2d 434, 437 (3rd Cir. 1978) ("[I]n the absence of specific subordinate findings, we cannot tell if that evidence was not credited or simply ignored"). The Administrative Law Judge need not accept a claimant's testimony. He may not, however, simply disregard it; he must evaluate the substance of the testimony and make appropriate findings with respect to the plaintiff's motivation and credibility. *Hargenrader v. Califano, supra*, 575 F.2d at 437, *citing Mode v. Celebrezze, supra*, 359 F.2d at 136 ("[T]he Hearing Examiner *must* consider the claimant's subjective evidence of pain and disability, as corroborated by family and neighbors") (emphasis supplied); *Longo v. Weinberger*, 369 F.Supp. 250, 256–57 (E.D.Pa.1974). The Administrative Law Judge's failure to evaluate a claimant's credibility necessitates remanding the case for consideration of that issue.

---

**7.** Title 42 United States Code, § 423, defines disability as:

(d)(1)(A) inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months;

    \*    \*    \*    \*    \*    \*

(2) For purposes of paragraph (1)(A)—

  (A) an individual . . . shall be determined to be under a disability only if his physical or mental impairment or impair-

ments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .

    \*    \*    \*    \*    \*    \*

(3) For purposes of this subsection, a "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

A remand is also required because of the Administrative Law Judge's failure to address the contradictions in the record about the date plaintiff allegedly became unable to work. The documentary evidence in the record lists the alleged onset date as 1970 (Tr. 154), 1973 (Tr. 150, 161, 169), and 1973 or 1974 (Tr. 176). In her testimony, plaintiff or her counsel stated no less than four times that plaintiff's illness forced her to stop working in 1970.[8] Especially in view of the plaintiff's obvious mental and emotional problems, her inability to speak English, and her displayed lack of knowledge about the simplest facts about her life, such as where she lived and her marital status, the Administrative Law Judge was not free merely to state that the alleged date of onset was July 15, 1973. He must address the conflicting evidence in the record and evaluate and explain his rejection of all the relevant allegations. *See Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974), *cert. denied*, 420 U.S. 931, 95 S.Ct. 1133, 43 L.Ed.2d 403 (1975).

Finally, the Court notes that the Administrative Law Judge apparently failed to consider whether plaintiff's documented physical and emotional problems in 1976 and 1977 supported plaintiff's claim that she was disabled prior to September 1974. Although evidence of a disability after the expiration of an individual's insured status is not sufficient to establish a disability prior to that time, *Gardner v. Richardson*, 383 F.Supp. 1, 6 (E.D.Pa.1974), the Administrative Law Judge cannot ignore such evidence with respect to a claim of earlier impairments. *Gold v. Secretary of Health,* *Education and Welfare*, 463 F.2d 38, 41–42 (2nd Cir. 1972). He must at least address the possible connection and explain why he finds the evidence to be insufficient to establish the plaintiff's contentions.

Accordingly, this case will be remanded for further findings consistent with this opinion.

---

8. The following statements are contained in the transcript of the hearing held on April 1, 1977.

ALJ: All right. Go ahead sir.

REP: Now, this is a hearing to enable you to obtain benefits from Social Security and to do that, I have to establish to you that you are . . . so . . . impaired, that you . . . do not and have not had the ability to work at any gainful employment since 1970 . . . or any time thereafter up to the present.

REPRESENTATIVE:

Q. Now, could you tell us why you stopped working on the 15th of June, 1970?

A. Because I couldn't any more.

A. Because I was ill . . .

Q. Has she ever looked for a job since 1970?

A. I have been so ill . . . so ill.

ALJ: Now, when was the last time that you worked, Mrs. Rosario? Was it in 1970 or 1973?

CLMT: I don't remember.

