**Alfredo Lugo CLEMENTE, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**No. 84 Civ. 2435 (VLB).**

United States District Court,
S.D. New York.

Sept. 29, 1986.

Stacy Cromidas, The Legal Aid Soc., Bronx, N.Y., for plaintiff.

Rosemarie E. Matera, Sp. Asst. U.S. Atty., New York City, for defendant.

### MEMORANDUM ORDER

VINCENT L. BRODERICK, District Judge.

#### I.

Plaintiff Alfredo Lugo Clemente brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of a final decision of the defendant Secretary of the Department of Health and Human Services (the "Secretary") which denied him Social Security Disability Insurance Benefits and Supplemental Security Income. On December 24, 1984, I vacated the Secretary's decision and remanded the case for further administrative proceedings. On April 24, 1985, the Administrative Law Judge ("ALJ") issued a recommended decision that plaintiff receive benefits retroactive to October 24, 1984 because plaintiff was disabled as of that date. Transcript ("Tr.") 154. On July 2, 1985, the Appeals Council adopted the ALJ's recommended decision.

Plaintiff now seeks reversal of the Secretary's decision to the extent that it fails to award benefits to plaintiff for the period extending from May 19, 1983 through October 24, 1984. He argues that he has sufficiently demonstrated his eligibility for benefits beginning May 19, 1983, and the decision denying him those benefits from that date to October 24, 1984 was not supported by substantial evidence. Specifically, plaintiff submits that the ALJ failed (1) to credit his allegations of pain and other symptoms, (2) to accord appropriate weight to the opinions of his treating physicians, and (3) to follow accepted standards in determining the date of the onset of his disability.

Defendant contends that the decision that plaintiff was not disabled prior to October 24, 1984 should be affirmed. He claims that the finding that prior to October 24, 1984, plaintiff could perform at least light work was supported by substantial evidence, and that there was substantial evidence for each of the ALJ's particular findings.

Plaintiff and defendant have each moved for judgment on the pleadings pursuant to Fed.R.Civ.P. 12(c). For the reasons which follow, plaintiff's motion is granted and defendant's motion is denied.

#### II.

Plaintiff was born on June 21, 1950 in Puerto Rico. Tr. 30. He was educated in Puerto Rico, completing high school and some college coursework. Tr. 18–19. The plaintiff's native language is Spanish. He is unable to communicate in or understand English. Tr. 19.

Prior to coming to the mainland in 1981, the plaintiff worked in Puerto Rico as an inspector for the IRS for three years. He was last employed as an assistant building superintendent from January to September, 1982. Since that time the plaintiff has been unemployed. Tr. 19–20.

At his administrative hearing on June 22, 1983, the plaintiff testified that his physical ailments made working in his previous jobs impossible. Tr. 21. According to plaintiff, he was diagnosed at a hospital in Puerto Rico in 1980 as having hypertension and an enlarged heart. Tr. 22, 115. He described his symptoms, including dizziness, shortness of breath, and chest pains, as severe enough so as to be completely debilitating. Plaintiff stated that the persistence of his symptoms has required him to depend on his sister for help with daily activities such as housework and grocery shopping. Tr. 23. He does not go outside without someone accompanying him, because his shortness of breath and dizziness arise after only walking three blocks. As a result of his physical problems, he spends most of his time reading and watching television. Tr. 23.

In considering the medical evidence from May 19, 1983 to October 24, 1984, the period in question, the following is relevant:

The plaintiff was admitted to the intensive care unit of Lincoln Medical and Men-

tal Health Center ("Lincoln Hospital") on May 19, 1983 and discharged eight days later. Tr. 107. The plaintiff complained of chest pain. His blood pressure was 200/130. Tr. 130. Lincoln Hospital conducted a series of evaluations to determine the nature and extent of plaintiff's disability. Plaintiff's doctors and the cardiology service advised that several tests, including a renal ultrasound, a nuclear wall motion study (cardiac), and a stress thallium test, be performed. Nothing in the medical record indicates that any of these three tests was performed. Tr. 109, 126. Plaintiff's final diagnosis was hypertension and unstable angina. Tr. 108.

The medical record indicates that Clemente had a seven year history of hypertension for which, several years earlier, Lopressor and Lasix had been prescribed. Tr. 85, 115. It further shows that plaintiff's mother and sister both suffered from hypertension; his mother was also afflicted with angina. Tr. 116.

During the month prior to his admission to Lincoln Hospital in 1983, plaintiff had been experiencing chest pain, mostly on exertion. On one occasion he felt non-radiating stabbing chest pain while climbing five flights of stairs. The pain was relieved by rest and Lopressor. Two days prior to admission to Lincoln Hospital plaintiff had a similar episode of chest pain at a friend's house, which recurred the next night. On May 19, 1983 plaintiff while walking experienced non-radiating chest pain which lasted for 30 minutes. At this time plaintiff decided to go to the medical emergency room at Lincoln Hospital. While walking to the hospital he again experienced an attack of chest pain, which was relieved only after the medical emergency room administered 3 tablets of Nitroglycerin. Tr. 118.

References to plaintiff's electrocardiogram ("EKG") taken at admission are made throughout the Lincoln Hospital medical record. This initial EKG revealed sinus bradycardia with ST waves elevated in the anterolateral leads. Tr. 109. ST segment elevation occurred in leads I and aVL and V5–V6, with a depression of the ST segment in leads II and aVF. Tr. 121, 130.

A progress record dated May 21, 1983 indicates that the EKG at admission was suggestive of anterolateral ischemia now resolving. Tr. 122. Additional medical findings revealed that cardiac enzymes were within normal limits, and MB fractions were negative. Tr. 107.

Plaintiff's progress during his stay at Lincoln Hospital is reflected in a series of reports and notes made by physicians in the intensive care unit and physicians from the cardiology service. An admission note shows that plaintiff had a history of prior chest pain, having been hospitalized in Puerto Rico in 1980 for 3 days. Tr. 115. On admission to Lincoln Hospital he was put onto myocardial infarction protocol in order to establish whether a heart attack had occurred. Tr. 120.

On May 21, 1983 plaintiff was transferred out of the intensive care unit to another ward. Progress, transfer, and acceptance notes indicate that the plaintiff's chest pain had subsided, yet his EKG remained unchanged. His blood pressure at this time was 170/130 and his pulse rate 64 per minute. It was noted that his hypertension was yet uncontrolled. Tr. 121, 123.

On the morning of May 26, 1983 plaintiff suffered from no chest pain, but he complained of dizziness and a headache. His blood pressure was 170/120. The record noted "patient's hypertension still uncontrolled." Tr. 129.

A subsequent cardiology service note, also dated May 26, 1983, stated that plaintiff's blood pressure had come down to 130/90. Tr. 130. Plaintiff was found not to have had a myocardial infarction. Diabetes mellitus and rheumatic heart disease were also ruled out. Plaintiff was described as having hypertensive cardiovascular disease. Coronary artery disease was yet to be ruled out. The cardiology service further added that once plaintiff's hypertension was controlled he should take a stress-thallium test. Tr. 130. Plaintiff was discharged on May 27. His blood pres-

sure was 160/84. Discharge medications were Inderal, Clonidine, HCTZ, and Nitroglycerin. Tr. 132, 133.

Plaintiff's medical condition and his capacity for work, from May 27, 1983 until October 24, 1984, has been characterized by two of plaintiff's treating physicians, Dr. Pereira and Dr. Rivas, in a medical report and a letter. Tr. 139, 143. These doctors reported that plaintiff still needed to have his condition further documented.

In a letter dated November 21, 1983 Dr. Rivas said:

> This is to certify that Alfredo Lugo is under my medical care and is treated for hypertension cardiac hypertrophy. He is also subject to possible anginal chest pain at rest and occasional fainting episodes, associated with these episodes. This might be related to variant angina (Prinzmetal) which needs to be further documented.
>
> He needs further investigations and he should not engage in any strenuous work or if possible not to work until his condition is improved and cleared up.

Tr. 143.

Dr. Pereira, who first examined the plaintiff at his admission to Lincoln on May 19, 1983, issued a medical report on July 5, 1983 based on clinical findings from his hospitalization. In concluding his report Dr. Pereira said that "[t]here is no indication as to when patient is able to work." Tr. 142.

Plaintiff's medical condition subsequent to October 24, 1984 is set forth in two medical records, a report by plaintiff's treating physician, Dr. Villanaeva,[1] dated March 20, 1985 and a medication chart from the following day.

Dr. Villanaeva's report reveals that on October 24, 1984 plaintiff was admitted for two weeks to the Lincoln Hospital intensive care unit for atrial fibrillation with slow ventricular response and hypotension. In addition, on March 20, 1985 the plaintiff had a five minute episode of palpitation at home.

In his report, Dr. Villanaeva diagnosed plaintiff as having "dizziness, sometimes related to postural hypotension, palpitation, hypertension with LVH, and angina."

The medication chart lists the prescriptions plaintiff was taking as of March 21, 1985. In addition to Diuril and Inderal, prescribed in 1983, plaintiff was also prescribed Procardia for his angina on October 30, 1984.

### III.

For purposes of obtaining both disability insurance and supplemental security income under the Act, persons are deemed disabled who are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

The reviewing court does not decide *de novo* whether a claimant is disabled. 42 U.S.C. § 405(g)(1983); *Townley v. Heckler*, 748 F.2d 109, 112 (2d Cir.1984). The Act provides that "findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Rivera v. Harris*, 623 F.2d 212, 216 (2d Cir.1980); *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of HEW*, 463 F.2d 38, 42 (2d Cir. 1972).[2]

---

**1.** As this name appears in the record it is practically illegible. Elsewhere it is spelled "Villa Nevada". Tr. March 21, 1985, p.2.

**2.** Substantial evidence has been defined as "more than a mere scintilla." It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) *quoting Con-*

*solidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). It is the function of the Secretary to appraise the credibility of the witnesses and to resolve conflicts in the evidence. *Perales*, 402 U.S. at 399, 91 S.Ct. at 1426. If the Secretary's determination is based on correct legal standards and supported by substantial evidence it is to be affirmed without a de novo examination by the reviewing

In *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir.1982), the Second Circuit summarized a five-step evaluation process promulgated by the Secretary in 20 C.F.R. § 404.1520, 416.920 (1985) to be used in evaluating disability claims:

First, the Secretary considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the Secretary next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the Secretary will consider him disabled without considering vocational factors such as age, education, and work experience; the Secretary presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the Secretary then determines whether there is other work which the claimant could perform.

The claimant bears the burden of proof on the first four steps while the Secretary must prove the final one. *Berry*, 675 F.2d at 467.

■ The Secretary's determination as to disability must take into account four factors: (1) objective medical facts and clinical findings, (2) diagnoses and medical opinions of examining physicians, (3) the claimant's subjective evidence of pain and physical incapacity as testified to by himself and others who observed him and (4) the claimant's age, educational background and work history. *Bluvband v. Heckler*, 730 F.2d 886, 891 (2d Cir.1984). These elements should be considered in combination with each other. *Bastien v. Califano*, 572 F.2d 908, 912 (2d Cir.1978); *Gold v. Secretary of HEW*, 463 F.2d 38, 41 (2d Cir.1972).

In this case, the Secretary found the plaintiff disabled within the meaning of the Act beginning October 24, 1984. Following the evaluative steps summarized in *Berry*, 675 F.2d at 467, my review will focus on whether or not the Secretary's decision to deny benefits from May 19, 1983 until October 24, 1984 was supported by substantial evidence.

There is no dispute as to the first two evaluative steps for the period at issue. First, the Secretary found that the plaintiff had not engaged in substantial gainful activity since May, 1982. Second, he determined that claimant had a severe impairment. It is with respect to the third and fourth inquiries that issues have been raised.

■ As to the third inquiry, an individual will be *presumed* to be disabled only where his impairment meets or equals those listed in Part A of Appendix 1, 20 C.F.R. Part 404, Subpart P. Defendant contends that from May 19, 1983 until October 24, 1984 plaintiff has failed to prove that his impairment is among those listed in Part A of Appendix 1 or that it is the medical equivalent of a listed impairment.

In his April 24, 1985 decision the ALJ determined that plaintiff as of October 24, 1984 suffered from an impairment listed under 20 C.F.R. Part 404, Subpart P, App. 1 § 4.05.[3] This finding was based on the submission of new evidence introduced subsequent to plaintiff's June 22, 1983 hearing including, in pertinent part, a medical report by plaintiff's treating physician, Dr.

---

court. *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir.1980).

**3.** Section 4.05 of Appendix 1 lists the following ailment: *"Recurrent Arrhythmias* (not due to digitalis toxicity) resulting in uncontrolled repeated episodes of cardiac syncope and documented by resting or ambulatory (Holter) electrocardiography."

Villanaeva, dated March 20, 1985, and a medication chart from the following day.[4]

In evaluating this new evidence the ALJ relied in large part on the testimony of Dr. Gerald Galst, a Board certified cardiologist, on staff as a medical advisor for the Office of Hearings and Appeals, who read the medical record as of March 21, 1985. In his recommended decision, later adopted by the Appeals Council, the ALJ concluded by saying "I agree with the medical judgment of Dr. Galst and conclude that the claimant has been disabled beginning October 24, 1984, the date he was hospitalized for treatment of atrial fibrillation." Tr. 153.

The record clearly reveals, however, that Dr. Galst did not testify to a date of onset. If anything, his testimony indicates that

plaintiff's condition, other than a documented atrial fibrillation, is a chronic one which has been with plaintiff for a period of many years, and has remained relatively unchanged since his hospitalization on May 19, 1983.[5]

■ The ALJ dismissed the possibility of an onset date prior to October 24, 1984 because records indicated that plaintiff's chest pain was relieved by Nitroglycerin and his abnormal EKG had returned to normal. While the ALJ's findings are consistent with discharge records from Lincoln Hospital as of May 27, 1983, the ALJ failed to give adequate weight to the full content of the testimony of Dr. Galst, upon whose testimony he so heavily relied.

---

**4.** The record is somewhat unclear as to what listed impairment plaintiff suffered from in Appendix 1. At the March 21, 1985 Hearing, Dr. Gerald Galst, testifying in the capacity of medical advisor for the Office of Hearings and Appeals, said that plaintiff's ailment satisfied § 4.05 (recurrent arrhythmias). Tr. March 21, 1985 at p.4. While the ALJ listed this section in his findings, in the main text of his opinion he listed § 4.04 (ischemic heart disease with chest pain of cardiac origin) as the proper listing. Tr. 153.

This distinction raises a serious issue with respect to the classification of plaintiff's impairment from May 19, 1983 until October 24, 1984. Hospital records clearly indicate that plaintiff's EKG at admission revealed ST elevation in heads I and aVL and V6. Tr. 121. This finding was characterized by one of plaintiff's doctors as "suggestive of anterolateral ischemia now resolving." Tr. 122. Listing § 4.04(B) of Appendix 1 reads in relevant part as follows:
  4.04 Ischemic heart disease with chest pain of cardiac origin as described in 4.00E with: ...
    3. Resting ECG findings showing an ischemic configuration or current of injury (see 4.00F1) with ST segment elevation to 2 mm. or more in either (a) leads I and aVL and V6 or (b) leads II and III and aVF or (c) leads V3 through V6;
  While clinical findings, taken alone, from the period at issue do not conclusively meet or equal Listing § 4.05 of Appendix 1, plaintiff's EKG findings, taken at his admission to Lincoln Hospital on May 19, 1983, Tr. 119, appear to satisfy the requirements of Listing § 4.04.

The ALJ made reference to plaintiff's EKG findings in both the September 22, 1983 and April 24, 1985 decisions; however, these facts were not developed by the ALJ. Although the burden is on the claimant to prove disability, *Parker v. Harris,* 626 F.2d 225, 231 (2d Cir.1980),

this Circuit and others have recognized the affirmative duty of the Secretary to develop the record fully and fairly, even when claimant is represented by counsel. *Decker v. Harris,* 647 F.2d 291, 299 (2d Cir.1981); *Vaughn v. Heckler,* 741 F.2d 177, 179 (8th Cir.1984).

**5.** The testimony, in relevant part, reads as follows:
  Q. All right. You're a Cardiologist. You've read the record in this case, and you've also seen the material submitted today from the treating source. Can you tell us, first doctor, is the record sufficient for you to form an opinion about this man's medical condition?
  A. I think with the additional information that was supplied today, it is.
  Q. You're referring to Exhibit 32. Is that right?
  A. That is correct.
  Q. All right. What is this man's condition, doctor?
  A. The individual apparently has severe hypertension to which he has been treated over a period of many years with a variety of medication and furthermore, this is characterized by enlargement of his heart which has been documented by prior X-rays and symtommatically [sic] by recurrent palpitations, which have resulted in his required hospitalization on at least three different occasions, two of which have occurred since the last hearing. These have been documented by EKG findings, and have been associated with a precipitous drop in his blood pressure and a sensation of syncopy or a feeling of faintness. I think this a severe problem that his [sic] a chronic problem, and it is one that will persist for the foreseeable future, and will require continuing medication.
  Transcript of March 21, 1985 at 3–4.

The ALJ also failed to give adequate weight to findings submitted by plaintiff's treating physician, Dr. Edgar Rivas, and to plaintiff's symptomology.

Dr. Rivas' letter of November 21, 1983 indicates that the severity of plaintiff's condition, while not fully documented until October 24, 1984, was apparent as early as May 19, 1983. In fact, plaintiff's symptoms were serious enough for Dr. Rivas to certify that he "should not engage in any strenuous activity or if possible not work." Tr. 143.

■ The law of this Circuit provides that "the expert opinions of a treating physician are binding upon the factfinder unless contradicted by substantial evidence to the contrary." *Stieberger v. Bowen,* 801 F.2d 29, 37 (2d Cir.1986); *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984), *quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978).

Dr. Villanaeva, in a report dated March 20, 1985, diagnosed plaintiff as having "dizziness, sometimes related to postural hypotension, palpitation, hypertension with LVH, and angina." While there is no clinical evidence of hypotension or palpitation from May 19, 1983 until October 24, 1984, plaintiff experienced dizziness on exertion and even during his stay at Lincoln Hospital. Tr. 23, 129. The ALJ did not properly credit plaintiff's symptoms, even though in evaluating a listed impairment as recognized in Appendix 1 the ALJ must consider all medical evidence, including symptoms, signs, and laboratory findings. 20 C.F.R. § 416.926 (1985). While dispositive clinical findings are clearly absent from May 19, 1983 until October 24, 1984, the abundance of symptoms and signs taken together with later clinical findings provide substantial evidence for establishing onset as of May 19, 1983.

## IV.

While the evidence discussed thus far would probably be sufficient as a basis for reversal in this case, for purposes of thoroughness, I will continue my application of the *Berry* steps.

The fourth step examines whether despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. The ALJ's determination that plaintiff could have resumed his previous job as an "accountant" [6] is not supported by substantial evidence. In relevant part, the ALJ concluded that "[w]hile claimant alleged to have dizzy spells and chest pain on exertion, he stated he climbed five flights of steps a day. Thus, even considering his age, closely approaching advanced age [7] he still retained the capacity to perform at least light work activity prior to October 24, 1984. The claimant might not have been able to resume his work as a finger lift operator or a superintendent in an apartment building, but he probably could have resumed his previous job as an accountant." Tr. 153.

As previously indicated, plaintiff's treating physicians stated on July 5, 1983 that there "is no indication as to when patient is able to work", Tr. 142, and on November 21, 1983 that plaintiff should, if possible, not work. Tr. 143. The law of this circuit provides that "the expert opinions of a treating physician are binding upon the fact finder unless contradicted by substantial evidence to the contrary." *Stieberger v. Bowen,* 801 F.2d 29, 37 (2d Cir.1986); *Bluvband v. Heckler,* 730 F.2d 886, 892 (2d Cir.1984), *quoting Bastien v. Califano,* 572 F.2d 908, 912 (2d Cir.1978). While the ALJ referred to the assessments by plaintiff's treating physicians, nowhere in the record did he take issue with their conclusions or cite conflicting medical evidence. As a result, the record fails to establish substan-

---

**6.** Plaintiff very clearly testified that he had never been an accountant. He had been an enforcement officer with the Puerto Rican IRS. Tr. 27–28.

**7.** The ALJ's findings included the statement that the claimant was 53 years old. Tr. 154. The Appeals Council, in adopting the ALJ's recommendation, correctly recognized the claimant's age to be 34.

tial evidence of plaintiff's residual functional capacity to perform his past work.

Furthermore, the ALJ's determination that plaintiff's alleged symptoms did not preclude him from performing his prior work is not supported by substantial evidence. The standard for evaluating a claimant's subjective symptoms is set forth in Section 223(d) of the Act, 42 U.S.C. § 423(d)(5)(A), which provides, in pertinent part:

An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require. An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability.

The plaintiff's job involved travelling to people's houses. In effect, he was an inspector, a job that required few if any accounting skills. Tr. 28. The record from May 19, 1983 to October 24, 1984 is replete with complaints by the plaintiff regarding his chest pain, dizziness, "lack of breath", and resulting physical restrictions. Tr. 24. Plaintiff's subjective complaints, which are consistent during the period from May 19, 1983 onward, are supported by clinical findings from Lincoln Hospital of hypertension and unstable angina. During his hearing on June 22, 1983, plaintiff maintained that he could not walk more than three blocks without getting dizzy and out of breath. Lincoln Hospital records from May 21, 1983 further indicate that as a precursor to his hospitalization plaintiff suffered from non-radiating chest pain while walking up five flights of stairs. This pain lasted for a period of 20 minutes. Tr. 118. Even with medication prescribed upon discharge from Lincoln Hospital, however, the plaintiff was forced to move to his sister's house because walking up to his apartment caused him to have chest pain and dizziness. Tr. 26.

■■■ The law of this Circuit and others provides that the Secretary may not discount plaintiff's testimony regarding his subjective symptoms without evaluating the substance of the testimony and making findings with respect to plaintiff's motivation and credibility. *Rosario v. Secretary of Health and Human Services*, 512 F.Supp. 874 (S.D.N.Y.1981); *Rosario v. Harris*, 492 F.Supp. 414, 418 (D.N.J.1980). Clearly, the ALJ has not adequately credited plaintiff's complaints and symptoms. Even if plaintiff had the ability to climb five flights of stairs without pain or dizziness, this fact alone would not provide substantial evidence to contradict the numerous symptoms and subsequent limitations plaintiff has alleged. Thus, there is no basis for concluding that plaintiff could function in his prior employment.

## V.

■■ The fifth evaluative step shifts the burden of proof to the Secretary to determine whether there is other work which the claimant can perform. In considering an individual's residual functional capacity the ALJ will consider age, education and past work experience to determine whether a plaintiff can do other work which exists in significant numbers in the nation's economy. 20 C.F.R. § 404.1520(f), § 416.920(f). The ALJ never reached this step.

## VI.

Where the Secretary has failed to sustain his burden, the ALJ's conclusions are not

supported by substantial evidence, and the Secretary has no new evidence to offer, the Second Circuit has stated that remand would serve no purpose. *Carroll v. Secretary of Health and Human Services,* 705 F.2d 638, 644 (2d Cir.1983). This is the case here. The ALJ's conclusion that plaintiff "still retained the capacity to perform at least light work activity prior to October 1984" is unsupported by substantial evidence. The ALJ failed to address statements by plaintiff's treating physicians describing him as disabled. Furthermore, he virtually ignored plaintiff's allegations of chest pain and dizziness and the subsequent restrictions these ailments placed on him. This evidence, combined with the fact that the ALJ made no recommendation as to what jobs plaintiff could perform in the national economy, provide compelling support for awarding the plaintiff benefits for the period at issue. The matter is remanded to the Secretary solely for the calculation of benefits for the period extending from May 19, 1983 to October 24, 1984.

SO ORDERED.